**DELAWARE BAY SURGICAL SERVICES, P.A., a Delaware Professional Services Corporation, Defendant–Below, Appellant, Cross–Appellee,**

v.

**Patrick SWIER, M.D., Plaintiff–Below, Appellee, Cross–Appellant.**

No. 370, 2005.

Supreme Court of Delaware.

Submitted: March 15, 2006.

Decided: May 22, 2006.

Rehearing En Banc Denied June 6, 2006.

---

**21.** Del. C. Ann. tit. 16, §§ 4767(a)(1) & 4768(a) (2003).

**22.** *Van Arsdall v. State,* 524 A.2d 3 (1987).

Robert D. Goldberg, Esq., (argued), of Biggs & Battaglia, Wilmington, Delaware for appellant.

David R. Hackett, Esq. (argued), of Griffin & Hackett, Georgetown, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

RIDGELY, Justice.

This case arises from the early termination of an employment contract between Plaintiff, Patrick Swier, M.D., and Defendant, Delaware Bay Surgical Services, P.A. ("DBSS"). After a bench trial, the Superior Court awarded compensatory and liquidated damages, costs and attorney's fees under the Wage Payment and Collection Act ("WPCA").[1] DBSS appeals the Superior Court's award of liquidated damages, costs and attorney's fees to Dr. Swier under the WPCA because (1) the final payment was not "wages" and (2) it had reasonable grounds to dispute the final payment. Dr. Swier cross-appeals the Superior Court's ruling that he must pay liquidated damages to DBSS because he contends the contract provided for an impermissible termination penalty.

We affirm the judgment against Dr. Swier because the contract language was a permissible liquidated damages provision. We reverse the judgment against DBSS because the WPCA does not apply when a party has reasonable grounds to dispute a claim arising under the employment at issue. Here, DBSS deducted the liquidated damages due from Dr. Swier's final compensation payment, and therefore had reasonable grounds to dispute the final payment to Dr. Swier.

---

1. 19 Del. C. §§ 1101—1115.

## I.

In March 2001 Dr. Swier began working part-time at DBSS. Section 2 of the contract set Dr. Swier's compensation at "fifty (50) percent of all [his] monthly collected receipts, adjusted by the salary advanced and expenses incurred for that month." The employment contract anticipated it would begin in March 2001 and last for two years.

Dr. Swier did not sign a part-time employment contract until June 2001. Both parties were represented by counsel. Section 12 of the contract provided for a payment of $25,000 by whichever party terminated the contract early. Section 12 of the contract provided:

TERMINATION WITHOUT CAUSE. This agreement may be terminated by either party upon one (1) month's prior written notice.

In recognition of the expenses incurred by Employer in employing Employee and introducing Employee to the medical community, and aiding the procurement by Beebe Medical Center, of certain equipment needed by Employee to perform certain procedures at the hospital, if Employee terminates this agreement prior to the end of its term, Employed agrees to pay Employer an early termination penalty equal to $25,000.00.

If Employer terminates Employee prior to the completion of this agreement, for reasons other than for good cause, as defined above, the Employer agrees to pay the Employee an early termination penalty equal to $25,000.00.

Regarding a final payment for compensation and expenses, Section 2(d) of the contract provided in part:

Upon termination of this Agreement, all draw payments shall cease. If this Agreement was terminated for reasons other than Good Cause as defined in Paragraph 11, the Employee shall be entitled to a final payment equal to 50% of all Collected Receipts, for the period from the date of this agreement to 90 days subsequent to the date of termination, less all salary and reimbursed expense payments made throughout this same period. The amount collected shall be payable to Employee 100 days subsequent to the date of termination. If this calculation results in a negative amount (draws in excess of salary earned) then this negative amount shall be repaid to the Employer by Employee 100 days subsequent to the date of termination.

By letter dated February 7, 2002, Dr. Swier gave notice to Dr. Katz of termination of the part-time agreement "effective one month from the date of receipt of this notice."

On July 9, 2002, the Practice Administrator at DBSS calculated the final compensation due to Dr. Swier from DBSS under Section 2 of the part-time Agreement at $18,356.52, then subtracted the $25,000 due from Dr. Swier to DBSS under Section 12. She sent a letter to Dr. Swier requesting the balance of $6,643.48. Dr. Swier refused to pay, and this lawsuit followed.

The Superior Court found that Dr. Swier had terminated the part-time agreement early and that he owed $25,000 in the liquidated damages. The Superior Court then ruled for Dr. Swier when it held that DBSS improperly withheld wages from Dr. Swier in violation of the WPCA.[2] The Court ordered DBSS to pay Dr. Swier

**2.** 19 Del. C. § 1107. Withholding of wages. "No employer may withhold or divert any portion of an employee's wages unless: (1) The employer is required or empowered to do so by state or federal law..."

$18,356.52 in wages plus $18,356.52 as a penalty under Section 1103(b) of the WPCA and attorney's fees.

## II.

We will first address Dr. Swier's cross-appeal and then the WPCA claims. Dr. Swier appeals the Superior Court's ruling that the $25,000 provision in Section 12 was a valid liquidated damages provisions and not an unenforceable penalty.[3] DBSS appeals the holding that it violated the WPCA by not paying Dr. Swier when it had reasonably calculated that he owed the balance of all obligations to DBSS because (1) the final payment was not "wages" under the WPCA and (2) it had reasonable grounds to dispute the final payment.

### A.

■■■ The validity of a liquidated damages provision involves a review of the intent of the parties to the contract. If the parties intended that the $25,000 payment be a penalty, it is legally unenforceable because contract law does not allow parties to impose a penalty for early termination.[4] Contract law allows parties to establish only a good faith estimation of actual damages sustained as a result of a contract's termination. In *S.H. Deliveries v. TriState Courier & Carriage*, the distinction between a penalty and a valid liquidated damages claim was explained:

> Liquidated damages are a sum to which the parties to a contract have agreed, at the time of entering into the contract, as being payable to satisfy any loss or injury flowing from a breach of their contract. It is, in effect, the parties' best guess of the amount of injury that would be sustained in a contractual breach, a way of rendering certain and definite damages which would otherwise be uncertain or not easily susceptible of proof. By contrast, a "penalty" is a sum inserted into a contract that serves as a punishment for default, rather than a measure of compensation for its breach. In other words, it is an agreement to pay a stipulated sum upon breach, irrespective of the damage sustained. The distinction between a penalty and a liquidated damages clause is significant—if a provision is considered a penalty, it is void as against public policy and recovery is limited to actual damages; if the provision is a true liquidated damages provision, it will be enforced according to its terms.[5]

■■■ We review this issue as a mixed question of law and fact. Determining the intent of the parties is a question of fact. We review the Superior Court's factual findings to ensure they are supported by sufficient evidence and are the result of a logical and orderly deductive process. Ordinarily, we review *de novo* a question of contract interpretation as a question of law.

■■■ Dr. Swier did not object to the liquidated damages provision at trial. In fact, he relied on it when he requested that the Superior Court award him liquidated damages claiming that DBSS breached. While failure to object at trial does not bar him from raising the issue on appeal, our review is limited to plain error.

---

3. It may seem conclusive that the parties used the term "penalty" in Section 12, but this fact is merely one factor that a court uses to determine whether a provision provides for legally enforceable liquidated damages or an impermissible penalty.

4. *E.g., Casson v. Nationwide Ins. Co.,* Del.Super. Ct., 455 A.2d 361, 368 (1982).

5. Del.Super., C.A. No. 96C–02–086, 1997 WL 817883, 2, 1997 Del.Super. LEXIS 217, 6–8 (May 21, 1997).

In analyzing a contract provision that requires payment in the event of termination, we apply the rule from *Lee Builders v. Wells*. This Court has explained that:

> In *Lee Builders v. Wells*, a case involving a liquidated damages provision..., the Court of Chancery articulated the following two-prong test for analyzing the validity of the amount of liquidated damages: "Where [1] the damages are uncertain and [2] the amount agreed upon is reasonable, such an agreement will not be disturbed."

\* \* \*

To be a valid liquidated damages provision under the first prong of the test, the damages that would result from a breach of the merger agreement must be *uncertain or incapable of accurate calculation*.[6]

\* \* \*

[T]o fail the second prong of Lee Builders, the amount at issue must be *unconscionable or not rationally related* to any measure of damages a party might conceivably sustain.[7]

Dr. Swier contends that, *ex ante*, the damages were easy to calculate with accuracy, definiteness, and certainty. Dr. Swier also contends that we should not consider any of the expenses incurred between the time performance commenced in March and when the contract was actually signed several months later. Dr. Swier finally contends that DBSS breached the Agreement first.

■ Based on the testimony presented at trial there was sufficient evidence that calculation of damages at the time of contract for a breach one year later was uncertain or incapable of accurate calculation. The evidence showed that $25,000 was a reasonable forecast, rationally related and not unconscionable, given Dr. Katz's testimony regarding the expenses DBSS incurred as a result of hiring Dr. Swier. We find no merit to Dr. Swier's contention that we should not consider any of the expenses incurred between the time performance commenced and the subsequent signing. Nor do we find merit to Dr. Swier's claim that DBSS breached the Agreement first. There is substantial evidence supporting the Superior Court's finding that Dr. Swier breached the agreement first. Based upon the evidence presented, the Superior Court correctly concluded that $25,000 liquidated damages were due to DBSS from Dr. Swier.

### B.

We now turn to the issue of whether DBSS is liable under the WPCA. The Superior Court decided that the issue was separate from the liquidated damages owed by Dr. Swier to DBSS. According to the Superior Court, DBSS should have paid all the amount owed to Dr. Swier without accounting for the amounts Dr. Swier owed to DBSS. Then, DBSS should have pursued its liquidated damages in an independent action.

DBSS makes two claims: first, that the final payment was not "wages" under the WPCA; and second, that DBSS had reasonable grounds to dispute the final payment. Although we reject DBSS's contention that the final payment was not

---

**6.** *Brazen v. Bell Atl. Corp.*, Del.Supr., 695 A.2d 43, 48 (1997) (quoting *Lee Builders v. Wells*, Del. Ch., 103 A.2d 918, 919 (1954)) (and citing *Wilmington Housing Authority v. Pan Builders, Inc.*, 665 F.Supp. 351, 354 (D.Del. 1987); RESTATEMENT (SECOND) OF CONTRACTS § 356 (1981)) (emphasis added).

**7.** *Brazen*, 695 A.2d at 48 (citations omitted) (emphasis added).

"wages," we hold that it was reasonable for DBSS to calculate a net payment due based upon the liquidated damages owed by Dr. Swier.

" 'Wages' means compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, commission or other basis of calculation." [8] DBSS contends that its final payment to Dr. Swier due under Section 2 of the contract should not be "wages" for the purposes of the WPCA because "wages are defined in the WPCA as payments made to employees on a regular basis at least once each month." [9] Section 2 of the Agreement requires the final payment to be drawn out over 90 or 100 days in order to allow time for proper accounting. Therefore, DBSS argues, the final payment does not fall on a regular basis, and therefore does not satisfy the definition of "wages."

 Questions of statutory interpretation are questions of law reviewed *de novo.* Statutory construction requires us to "ascertain and give effect to the intent of the legislature." [10] Because a statute passed by the General Assembly is to be considered as a whole, rather than in parts, each section should be read in light of all others in the enactment.[11] In addition, "words and phrases shall be read with their context and shall be construed according to the common and approved

usage of the English language." [12] If uncertainty does exist, the statute must be construed to avoid "mischievous or absurd results." [13] Thus, the "golden rule of statutory interpretation . . . is that unreasonableness of the result produced by one among possible interpretations . . . is reason for rejecting that interpretation in favor of another which would produce a reasonable result." [14] We will therefore reject any reading of the Act inconsistent with the intent of the General Assembly.

 We conclude DBSS's argument is without merit. Rather than rely on the WPCA's definition of "wages" in § 1101 Definition of terms, DBSS attempts to bootstrap a requirement into an exception by citing § 1102 relating to payment of wages on regular paydays. It argues that because it has not satisfied the requirement in § 1102, it is excused from all requirements under the WPCA. This argument ignores the clear language of § 1101. "Wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, commission or other basis of calculation." [15] The final payment clearly was compensation due Dr. Swier in return for his labor or services as an employee. Thus, the final payment falls squarely within the definition of wages provided by the General Assembly.

DBSS next contends that § 1103(b) allows an employer to withhold wages when

---

8. 19 Del. C. § 1101(a)(5).

9. 19 Del. C. § 1102(a). "Every employer shall pay all wages due to the employer's employees on regular paydays designated in advance by the employer, which shall be at least once during each calendar month..."

10. *Coastal Barge Corp. v. Coastal Zone Ind. Control Bd.,* Del.Supr., 492 A.2d 1242, 1246 (1985).

11. *Coastal Barge,* 492 A.2d at 1245; *see also Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975).

12. 1 Del. C. § 303.

13. *Moore v. Wilmington Housing Authority,* Del.Supr., 619 A.2d 1166, 1173 (1993).

14. *Coastal Barge,* 492 A.2d at 1247 (citing 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 45.02 (4th ed.1984)).

15. 19 Del. C. § 1101(a)(2).

it has "any reasonable grounds for dispute," [16] and that the liquidated damages due from Dr. Swier were sufficient reasonable grounds. DBSS argues that under *Peirson v. Hollingsworth,*[17] it was entitled to offset the liquidated damages owed by Dr. Swier. *Hollingsworth* held that deductions of expenses from an employee's salary are allowed. "The employer may avoid the penalty imposed by the statute if he has any reasonable grounds for dispute of the unpaid wages." [18]

Our resolution of this claim requires two steps. First, we must determine whether "reasonable grounds" applies narrowly only to disputes involving wages, or whether it applies to any dispute arising under the employment contract between an employer and employee. Second, we must apply the rule to the facts of this case.

Dr. Swier cites § 1104(a) and contends that we should affirm by narrowly interpreting the object of "dispute" to be only those of wages, and not other balances owed by an employee to an employer.[19] We do not interpret § 1104(a) as superseding or limiting § 1103(b). Instead, we view these two provisions as companions of equal weight.

■ We agree with the rule in *Hollingsworth.* An employer has an implied right to withhold employee wages as long as that employer has "any reasonable grounds for dispute" because the Delaware Code only imposes penalties on an employer who fails to pay an employee wages without any reasonable grounds for dispute.[20] While the WPCA does not define "any reasonable grounds," *Hollingsworth* recognizes that other disputes not involving wages but arising from the employment are sufficient to justify wage withholding.[21] It has been the operative case law in Delaware since 1969 without intervention by the General Assembly. We view the *Hollingsworth* interpretation of the WPCA as a correct interpretation of the General Assembly's intent.

■ Consistent with *Hollingsworth,* we hold that under § 1103(b) an employer may withhold wages when there are reasonable grounds for a dispute between the employer and employee arising out of the employment contract. In other words, when an employee leaves owing an employment-related debt to his employer, the employer may deduct the employee's debt from final wages.

■ In the second stage of our analysis, we conclude that DBSS had reasonable grounds to dispute its final payment to Dr. Swier. At the time of contract, both par-

---

**16.** "If an employer, without any reasonable grounds for dispute, fails to pay an employee wages, as required under this chapter, the employer shall, in addition, be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day..." 19 Del. C. § 1103(b).

**17.** 251 A.2d 350 (Del.Super.1969).

**18.** *Peirson v. Hollingsworth,* 251 A.2d 350, 352 (Del.Super.Ct.1969).

**19.** "In case of a dispute over the amount of wages, the employer shall pay without condition and within the time set by this chapter all wages or parts thereof conceded by the employer to be due, leaving to the employee all remedies the employee might otherwise be entitled to, including those provided under this chapter, as to any balance claimed." 19 Del. C. § 1104(a).

**20.** 19 Del. C. § 1103(b) ("If an employer, without any reasonable grounds for dispute...").

**21.** *Peirson v. Hollingsworth,* 251 A.2d 350, 352 (Del.Super.Ct.1969) ("an employer would not be precluded from asserting a legal defense as a set-off if it related to the validity of the wage claim itself. Nor does the statute, by any express terms, prevent the assertion by the employer of a defense of set-off of a transaction or claim unrelated to the validity of the claim itself.").

ties were sophisticated and represented by counsel. At the time of termination, DBSS had a signed contract with Dr. Swier giving it a right to liquidated damages in the event of the early termination which in fact occurred as found by the Superior Court. Because DBSS had reasonable grounds to dispute the payment of wages based upon the employment contract, liquidated damages and attorney's fees were not due Dr. Swier under the WPCA.

### III.

The judgment of the Superior Court in favor of DBSS in the amount of $25,000 as to its contract claim against Dr. Swier is **AFFIRMED**. The judgment in favor of Dr. Swier for unpaid wages in the amount of $18,356.52 is also **AFFIRMED**. The judgment in favor of Dr. Swier for liquidated damages and attorney's fees under the WPCA is **REVERSED**. This matter is remanded for the entry of final judgment consistent with this opinion.