IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2008 Session

# BRIM HOLDING COMPANY, INC. v. PROVINCE HEALTHCARE COMPANY

Appeal from the Chancery Court for Davidson County
No. 06-1597-I    Claudia C. Bonnyman, Chancellor

No. M2007-01344-COA-R3-CV - Filed May 28, 2008

The issue on appeal in this contract dispute is whether the defendant breached its indemnification obligations under the terms of a stock purchase agreement. The trial court found that the plaintiff was entitled to be reimbursed for payment of a claim specifically identified under the indemnification provisions of a stock purchase agreement. Significantly, the trial court found that the indemnity provisions in the stock purchase agreement anticipate the specific loss and assure that it will be paid by the defendant. The defendant contends that the plaintiff has already received reimbursement for that payment through the post-closing working capital adjustment and the plaintiff, therefore, is not entitled to reimbursement under the indemnification provisions. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

C. Mark Pickrell, Joseph A. Woodruff and R. Mitchell Porcello, Nashville, Tennessee, for the appellant, Province Healthcare Company.

Brigid M. Carpenter, Nashville, Tennessee, and Allen V. Farber, Washington, D. C., for the appellee, Brim Holding Company, Inc.

## OPINION

Brim Holding Company, Inc. ("Plaintiff") and Province Healthcare Company ("Defendant") entered into a Stock Purchase Agreement ("Agreement") on June 15, 2004. Pursuant to the Agreement, Defendant, which was the sole shareholder of Brim Healthcare, Inc., agreed to sell to

Plaintiff all of the outstanding stock of Brim Healthcare, Inc., (the "Company").[1] The sale of the stock closed on June 30, 2004.

The Agreement expressly provided that Defendant, the seller of the stock, would indemnify Plaintiff, the buyer of the stock, from and against "any Losses related to or in connection with In re: CHAMA, Inc., DCH, Inc., et. al (Debtors), Chapter 7 Case No. 98-2252, 98-2750 (jointly administered) and Jeffrey L. Burtch, Chapter 7 Trustee (Plaintiff) v. Brim Healthcare, Inc. (Defendant), (Adversary proceeding No. 03-52528), U.S. Bankruptcy Court for the District of Delaware."

In August of 2004, Plaintiff paid $500,000 to settle the CHAMA litigation, and then made demand upon Defendant for indemnification. Defendant rejected Plaintiff's request for indemnification. Defendant argued that Plaintiff had already received the funds for that payment through the working capital calculation.[2] Defendant contended that the closing balance sheet had included a $500,000 reserve for the CHAMA litigation, which had the effect of reducing the working capital of the Company by $500,000. Moreover, Defendant claimed that reimbursing Plaintiff for the CHAMA litigation payment would result in a double payment of the CHAMA liability by Defendant because Plaintiff had already been compensated for the $500,000 CHAMA litigation payment through the reduction in working capital attributable to the $500,000 reserve.

Thereafter, Plaintiff filed this breach of contract action against Defendant. Following discovery, Plaintiff filed a motion for summary judgment. Defendant opposed the motion, arguing that a dispute of material fact existed as to whether Plaintiff suffered a loss. Specifically, Defendant contended that a trier of fact could reasonably conclude that Plaintiff suffered no loss because the CHAMA litigation payment did not exceed the amount that had been reserved as a current liability in computing the working capital as provided in Article 1 of the Agreement.

The trial court granted Plaintiff summary judgment. Significantly, the trial court found that "the indemnity paragraph in the [Agreement] clearly anticipates the specific loss and assures that it will be paid by [Defendant], not by the Company" and that "[t]he [Agreement] does not state or imply that indemnification will affect the Company value, by adjusting the working capital or otherwise." This appeal followed.

---

[1] Pursuant to the Agreement, Plaintiff purchased 1.6 million shares of the issued and outstanding stock of the Company for $13.1 million.

[2] According to Article 1, the parties agreed that the "working capital" of the Company at the time of closing would be $550,000. Adjustments and calculations would be made post-closing to determine the actual working capital as of the date of closing, and thereafter payments would be made, if needed, to ensure that working capital as of the date of closing was $550,000.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall*, 113 S.W.3d 721. Moreover, it is proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, it is not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

## ANALYSIS

Defendant presents four issues on appeal. The issues presented are: (1) whether the plaintiff is entitled, as a matter of law, to receive reimbursement for an indemnified loss through one provision of the contract when reimbursement for the same loss was received under a separate section of the contract; (2) whether the plaintiff established, as a matter of law, that the defendant breached the contract between the parties where the contract required indemnification only for a defined "loss"; (3) whether the plaintiff established, as a matter of law, that it suffered damages; and

(4) whether the trial court erred in awarding prejudgment interest to the plaintiff. We have determined the first three issues are resolved by our determination that the indemnification provision in Article 9 of the Agreement is unequivocal.

Choice of Law

The parties agreed that the Agreement would be construed in accordance with Delaware law. Accordingly, we look to Delaware for the applicable legal principles to be applied to interpret the Agreement.

Under Delaware law, the interpretation of a contract is a question of law, *Delaware Bay Surgical Servs., P.A. v. Swier*, 900 A.2d 646, 650 (Del. 2006)*,* and questions of law are reviewed *de novo*. *Grand Ventures v. Whaley*, 632 A.2d 63, 66 (Del. 1993). The Supreme Court of Delaware explained the principles governing contract interpretation as follows:

> The principles governing contract interpretation are well settled. Contracts must be construed as a whole, to give effect to the intentions of the parties. Where the contract language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning. Courts consider extrinsic evidence to interpret the agreement only if there is an ambiguity in the contract.

*Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996) (internal citations omitted).

The court must determine whether a contract is ambiguous by reviewing the entire contract. *Pisano v. Delaware Solid Waste Auth.*, No. 05C-03-132-FSS, 2006 WL 3457686, at *2 (Del. Super. Ct. Nov. 30, 2006). "Ambiguity only exists when the contract's terms are 'reasonably or fairly susceptible of different interpretations' or if the terms may have more than one meaning." *Id.* (quoting *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)). The court will not create ambiguity where the ordinary meaning of the terms leaves no room for uncertainty. *Id.* (citing *Rhone*, 616 A.2d at 1197). "If the language is clear and unequivocal, the parties are bound by its plain meaning." *Id.* (citing *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del.1997)).

The Indemnification Provision

The parties made express provision for the CHAMA claim when they entered into the Agreement. The relevant provision is set forth in Article 9 of the Agreement, which provides:

> **9.1    Seller's Indemnification Obligations.** After the Closing, and subject to the conditions set forth in this Article 9, Seller agrees to indemnify, defend and hold harmless Buyer . . . from and against any and all Losses (as defined in Section 11.1 below) reasonably paid or incurred by the Buyer Indemnities, or any of them, and resulting from, based upon or arising out of:

-4-

**9.1.1** the inaccuracy or untruth of any representation or warranty made by Seller in Articles 2 and 3 of this Agreement or in the Seller Disclosure Schedule;

**9.1.2** a breach of or failure to perform any covenant or agreement of Seller made in this Agreement;

**9.1.3** any Losses related to or in connection with In re: CHAMA, Inc., DCH, Inc., et. al (Debtors), Chapter 7 Case No. 98-2252, 98-2750 (jointly administered) and Jeffrey L. Burtch, Chapter 7 Trustee (Plaintiff) v. Brim Healthcare, Inc. (Defendant), (Adversary proceeding No. 03-52528), U.S. Bankruptcy Court for the District of Delaware;

**9.1.4** any Losses related to or in connection with (i) medical malpractice claims or (ii) other claims, including workers compensation claims, for which the Company would have had the benefit of insurance coverage provided by Seller or Seller's insurers if such claim would have been made immediately prior to the Closing, . . .

**9.1.5** any Losses related to Company's supplemental deferred compensation plan maintained by Seller; and . . .

The Agreement defined "Losses" as "any and all assessments, losses, fines, judgments, costs, damages and expenses, including without limitation, interest, penalties, cost of investigation and defense, and reasonable attorneys' and other reasonable professional fees and expenses."

In granting summary judgment to Plaintiff, the trial court analyzed the issue as follows:

Read in context with the other indemnification obligations itemized in Article 9.1, the straight-forward language requires that the items to be indemnified are the obligations of [Defendant]. Other indemnification items listed in Article 9 of the [Agreement], besides the loss caused by the CHAMA claim, are breach of the [Agreement] by [Defendant], failure of any warranty in the Agreement from [Defendant], and claims for payment to a third party which were previously insured claims. The [Agreement] states that indemnification of these items will adjust the purchase price for tax purposes. The [Agreement] does not state or imply that indemnification will affect the Company value, by adjusting working capital or otherwise. The Court finds instead, that Article 9 of the [Agreement], requires payment to the Plaintiff without regard to the Company and its Share value and without the intent to affect the Company. If [Defendant] indemnification of these losses was intended to affect the Company, the parties could have said so in the

[Agreement]. As a result, the indemnification payment to the Plaintiff, required under the Agreement, will not be an accrued liability adjustment from or a cash equivalent asset adjustment to, working capital of the company.

The [Agreement] requires that its terms will be construed in accordance with Delaware law. A contract is not ambiguous simply because the parties do not agree upon its proper construction. *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195-96 (Del. 1992). The [Agreement] must be enforced according to its terms. A court must construe the contract as a whole, "giving effect to all of its provisions and avoiding a construction which would render any of those provisions illusory or meaningless." *Seabreak Homeowners Ass'n Inc. v. Gresser,* 517 A.2d 263, 269 (Del. Ch. 1986).

As the trial court correctly found, the parties anticipated the loss now at issue and made express and unequivocal provisions to assure that the loss, if any, would be paid by Defendant.

Defendant would have us disregard the unambiguous indemnity provision, indeed totally nullify the indemnity provision as it pertains to the CHAMA claim, and resolve the dispute by sifting through a murky maze of assumptions to ascertain the parties' unstated intentions regarding working capital, which was computed as of the date of closing, long after the parties entered into their expressed and unequivocal agreement concerning the CHAMA litigation. We decline this invitation because at arriving at the intention of the parties to a contract, the court does not attempt to ascertain the parties' state of mind at the time the contract was executed, rather their intentions as actually embodied and expressed in the contract as written. *See Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996). The parties to the Agreement expressed their intention to be that Defendant would indemnify Plaintiff if Plaintiff sustained a loss resulting from the CHAMA litigation. Thus, an attempt by this court to ascertain the parties' state of mind at the time the contract was executed would be improper, not to mention unnecessary. *See Id.*

It is undisputed that Plaintiff paid $500,000 to settle the CHAMA litigation and that it incurred attorney fees and costs incident to that litigation. The Agreement expressly and unequivocally provides that Plaintiff is entitled to recover its losses arising from the CHAMA litigation, including "cost of investigation and defense, and reasonable attorneys' . . . fees and expenses." The payment of $500,000 to settle the CHAMA litigation, and reasonable attorneys' fees and expenses incurred incident thereto, constitute a loss as defined in the Agreement, for which Plaintiff is entitled to indemnification from Defendant.

Prejudgment Interest

For its next issue, Defendant contends the trial court erred by awarding Plaintiff prejudgment interest.[3] We respectfully disagree.

Prejudgment interest serves the purpose of compensating a party for the loss of funds to which it was legally entitled. An award of prejudgment interest is "within the sound discretion of the trial court" and will not be disturbed "unless the record reveals a manifest and palpable abuse of discretion." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998) (citing *Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 446 (Tenn. 1992)). Pursuant to this standard, we are required to give great deference to the trial court in the decision of whether to award prejudgment interest. *Myint*, 970 S.W.2d at 927.

The court is to consider three general principles when deciding whether to award or deny a request for prejudgment interest. The court is to consider whether the amount of the obligation is certain and not disputed on reasonable grounds. *Id*. It is to consider whether the existence of the obligation itself is not disputed. *Id*. And it is to keep in mind that "the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Id*.

The evidence fully supports the trial court's decision to award Plaintiff prejudgment interest. Accordingly, we affirm the award of prejudgment interest.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Defendant.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[3]Although we applied the law of Delaware to interpret the Agreement, as mandated by the Agreement, the parties are in agreement that the law of Tennessee controls the issue of prejudgment interest, as is evidenced by the legal arguments set forth in their briefs on appeal. Accordingly, we have analyzed the issue of prejudgment interest based upon the law of Tennessee.