IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICHARD F. CARUSO, M.D., P.A. T/A SEASIDE GASTROENTEROLOGY CONSULTANTS, | § § § § § | No. 350, 2024<br><br>Court Below: Superior Court of the State of Delaware |
| Plaintiff Below, Appellant, | § § § § | C.A. No. N21C-10-248 |
| v. | § § § | |
| HEATHER BARTON, M.D., | § § § | |
| Defendant Below, Appellee. | § § | |

Submitted: March 26, 2025
Decided:    May 2, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## ORDER

This Court, having considered the briefs and record on appeal, and after oral argument, rules as follows:

(1)    Richard F. Caruso, M.D., P.A. T/A Seaside Gastroenterology Consultants ("Seaside") filed suit in the Superior Court against Heather Barton, M.D., a former physician employee of the Seaside medical practice. Seaside sought liquidated damages for Barton's alleged breach of a non-compete provision in her employment agreement after she left Seaside and joined a nearby competing gastroenterology practice. Following the parties' cross-motions for summary

judgment, the Superior Court ruled in Barton's favor. The court reasoned that Barton did not compete with Seaside after she left because Seaside had stopped operating and sold all its assets before Barton's resignation took effect. Because Seaside was no longer operating, the liquidated damages provision was, in the court's view, not connected to any ongoing business interest, unrelated to any business loss, and therefore an improper penalty for choosing different employment.

(2) On appeal, Seaside argues that the Superior Court erred in granting Barton summary judgment because Seaside was still operating at the time Barton joined the nearby competing practice. If Seaside was an operating entity, then the premise of the Superior Court's ruling – that the liquidated damages provision was unenforceable as a penalty because Seaside no longer had business interests to protect – goes away.

(3) Although we would have preferred to end the ongoing litigation between the parties, the cost of which has now exceeded the amount in dispute, we reluctantly conclude that a disputed issue of material fact exists as to whether Seaside was operating at the time Barton left the practice and joined another gastroenterology practice. Thus, we reverse the court's grant of summary judgment to Barton and remand for limited further proceedings.

(4)     Richard F. Caruso, M.D., owned and operated Seaside, a medical practice specializing in gastroenterology in Lewes, Delaware.[1]  Seaside employed gastroenterologist Heather Barton, M.D., from 2018 until May 2021.[2]

(5)     Barton signed an Employment Agreement with Seaside for an initial term of two years, effective July 1, 2018 (the "Agreement").[3]  Section 10(b) contains the covenant of non-competition:

> For and during the term of this Employment Agreement, and for two (2) years subsequent thereto, Employee shall not compete in any way with Employer directly or indirectly, and will not consult with or have any interest in any business, firm, person, partnership, corporation or other entity, whether as employee, officer, director, agent, security holder, creditor, consultant or otherwise, which engages in the practice of Gastroenterology or provides services to any individual or entity which competes with Employer directly or indirectly, in any aspect of the medical practice of Gastroenterology at any location within ten (10) miles of Employer's office located at 1309 Savannah Road, Lewes, DE.[4]

(6)     Section 10(c) contains a liquidated damages provision:

> The parties acknowledge and agree that any breach of the foregoing Covenants will cause irreparable damage to Employer, and that the usual amount of damages to which the Employer should be entitled would be difficult to ascertain. Employee therefore agrees that upon the occurrence of a breach of one or more of the foregoing Covenants, she will pay to the Employer as liquidated damages and not as a penalty, the sum of One Hundred thousand ($100,000.00) dollars[.][5]

---

[1] App. to Appellant's Opening Br. at A59-60; A115 [hereafter A__].
[2] A16; A171-73.
[3] A16-30.
[4] A23.
[5] A24.

3

(7)     The parties renewed the Agreement several times with the last renewal set to expire on February 28, 2021.[6] Prior to expiration, Barton and Caruso discussed the possibility of Barton buying into the practice as a partner.[7] According to Barton, the negotiations stalled.[8]

(8)     Barton began discreetly exploring other employment options.[9] As early as January 2020, she contacted Beebe Healthcare ("Beebe") in Lewes, Delaware and began actively pursuing a gastroenterologist position with them in December 2020.[10]

---

[6] *See* Exhibit A at 5:22-23, 6:1-11 (Ruling on Cross-Mot. for Summ. J. Tr., July 24, 2024) [hereafter Tr. at __]; *see also* A16; A32 (Extension to Employment Agreement, Sept. 14, 2020); A33 (Extension to Employment Agreement, Dec. 22, 2020).

[7] *See* A28 (Section 18 provides that "[t]he parties agree that it is their intention to discuss the possibility of a 'buy in' or ownership interest in the endoscopy center (known as Seaside Endoscopy Pavilion) after completion of the first twelve months of employment."); A75 at 16:3-13 (Deposition of Barton, admitting that she and Caruso discussed the possibility of a buy-in for the endoscopy center and a partnership in the practice prior to her resignation from Seaside).

[8] *See* A78-79; *see, e.g.*, A78 at 27:11-13, 17-19 (Barton: "[W]e couldn't agree on a partnership agreement or an employment agreement . . . [Caruso] would not get me the information needed to buy into a practice."); *id.* at 28:5-10 (Q: "Right, so -- and that's my understanding, that you voluntarily chose to leave because you couldn't reach an agreement on the partnership terms and conditions; fair to say?" Barton: "That's fair to say.").

[9] *See* A77 at 24:7-15 (Q: "As of February 28th, 2020, you were still considering going to Beebe, though, correct?" Barton: "I wasn't considering going to Beebe. I was seeing what my other options were in the area." Q: "At the very least, considering leaving Dr. Caruso, correct?" Barton: "Yes"); A80 at 34:17-25 (Q: "So from January of 2020 . . . until March of 2020, you were exploring options at Beebe, correct?" Barton: "Yes." Q: "And had not told Dr. Caruso that you were doing so, correct?" Barton: "Correct.").

[10] *See* A50-52 (emails dated December 10, 2020, between Barton, Bobby Gulab, a doctor at Beebe Healthcare, and William Cook, the Beebe Director of Physician Recruitment, explaining that Barton was "possibly joining the medical group" and "interested in moving things forward."); A34-40 (emails dated from January 31, 2020 to February 28, 2020, connecting Barton with Gulab and discussing a potential opportunity for Barton to join the Beebe team); *see generally* A34-56.

Barton did not tell Caruso that she was considering leaving Seaside or contemplating a position at Beebe.[11]

(9) Around the same time, in December 2020, Caruso began negotiating with AmSurg Anesthesia Management Services, LLC ("AmSurg") for the sale of Seaside.[12] Caruso's operational and management consultant, Michael T. Fiore, discussed the office lease, physical assets and employment agreements with AmSurg.[13]

(10) On February 16, 2021, Seaside received Barton's Notice of Termination.[14] In a letter dated March 8, 2021, Seaside accepted Barton's resignation effective May 28, 2021, and raised the post-employment non-compete obligation:

> I remind you that if at any time during the two (2) years following the Termination Date, you engage, directly or indirectly, in the practice of gastroenterology anywhere within a ten (10) mile radius of Seaside's office at 1309 Savannah Road, Lewes[,] Delaware, you must immediately pay Seaside liquidated damages of One Hundred Thousand Dollars ($100,000.00).[15]

---

[11] *See* A80 at 34:17-25.
[12] App. to Appellee's Answering Br. at B05-11 [hereafter B__] (emails produced by Caruso's operational and management consultant, Michael T. Fiore of M.T. Fiore & Associates, LLC, discussing the potential sale of Seaside to AmSurg).
[13] *See id.*
[14] *See* A57.
[15] A57.

(11) Seaside sold its assets to AmSurg on May 11, 2021.[16] The Bill of Sale conveyed "all of the tangible personal property contained within the office-based medical practice premises currently maintained by [Seaside]."[17] This included office furniture, medical supplies, and IT equipment.[18]

(12) On May 12, 2021, Caruso executed an employment agreement with an affiliate of AmSurg, EHG GI DE, P.C.[19] According to the terms of his new employment, Caruso was prohibited from competing within 25 miles of Lewes, Delaware during the initial term of his employment, effective July 19, 2021.[20]

(13) Barton began working as a gastroenterologist at Beebe Hospital in June 2021, performing the same or similar duties as those she performed for Seaside, within ten miles of Seaside and within two years of leaving Seaside.[21] On October 28, 2021, Seaside filed this Superior Court action against Barton.[22] It claimed that Barton refused to pay the agreed upon liquidated damages upon breach, as provided by her Employment Agreement.

---

[16] B01-04 (Bill of Sale); Tr. at 7:7-9.
[17] B01.
[18] *See* B02.
[19] B12-24 (Employment Agreement, May 12, 2021); A156.
[20] *See* B15-17, 22.
[21] Tr. at 7:10-11; A73 at 6:1-6 (Q: "And when did you start there?" Barton: "I started at the end of June 2021." Q. "And do you have -- did you enter into a contract with Beebe?" Barton: "I did."); A74 at 12:16-20 (Q: "[Y]ou admit that as of June 2021, you began providing gastroenterology at Beebe Health, and I think you already testified to that; is that right?" Barton: "Yes."); *see also* A67 at ¶¶ 8-10 (Barton admits she practiced "within the restricted area of ten miles of Plaintiff" and performed "the same or similar duties as those [] performed with Plaintiff.").
[22] A59-63 (Pl.'s Filed Compl., Oct. 28, 2021).

(14) After the parties cross-moved for summary judgment, the Superior Court granted Barton's motion in a July 24, 2024 bench ruling.[23] The court held that it was impossible for Barton to compete with Seaside, as Seaside had stopped operating and sold all its assets before Barton's resignation took effect.[24] According to the court, without an operating medical practice, the liquidated damages provision was "untethered to any reasonable interest, and there's no result in loss and no business loss that is involved in this situation."[25] Enforcing the liquidated damages provision, the court held, "would be nothing but a penalty for her to choose a different employment."[26] Seaside filed a timely appeal to this Court from the Superior Court's summary judgment ruling in Barton's favor.

(15) This Court reviews a trial court's grant of a motion for summary judgment *de novo*.[27] Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[28] The enforceability of a liquidated damages provision is a question of law subject to *de novo* review.[29]

---

[23] Tr. at 4:11-12, 13:13-17.
[24] *Id.* at 12:11-23.
[25] *Id.* at 13:9-12.
[26] *Id.* at 12:19-21.
[27] *GMG Ins. Agency v. Edelstein*, 328 A.3d 302, 309 (Del. 2024) (citations omitted).
[28] Del. Super. Ct. Civ. R. 56(c).
[29] *Delaware Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006).

(16)   Under Delaware law, "[a]ny covenant not to compete provision of an employment, partnership or corporate agreement between and/or among physicians which restricts the right of a physician to practice medicine in a particular locale and/or for a defined period of time, upon the termination of the principal agreement of which the said provision is a part, shall be void."[30]   Although the statute precludes injunctive relief for breach, it does not prohibit damages.   There is a carveout allowing damages for violating a physician non-compete:

> . . . all other provisions of such an agreement shall be enforceable at law, including provisions which require the payment of damages in an amount that is reasonably related to the injury suffered by reason of termination of the principal agreement. Provisions which require the payment of damages upon termination of the principal agreement may include, but not be limited to, damages related to competition.[31]

(17)   To enforce a liquidated damages provision in a physician employment agreement, the plaintiff must prove that the departing physician breached the terms of the non-compete restriction, and the liquidated damages provision is reasonable and does not act as a penalty.[32]  Here, the Superior Court found that Barton breached the non-compete provision.   She joined a competing gastroenterology practice less than 10 miles from Seaside's practice, within two years following termination.  But

---

[30] 6 *Del. C.* § 2707.
[31] *Id.*
[32] *Id.*

the court held that the $100,000 liquidated damages provision was unenforceable as a penalty because there were no damages caused by the competition.

(18)  Without other considerations, we can say under the facts of this case that the liquidated damages provision in Barton's employment contract is reasonable and enforceable.  "Liquidated damages are a sum to which the parties to a contract have agreed, at the time of entering into the contract, as being payable to satisfy any loss or injury flowing from a breach of their contract."[33]  In Delaware, a liquidated damages provision is valid and enforceable when it reflects the parties' best estimate of unascertainable damages and is not a penalty.[34]  By contrast, a penalty is "an agreement to pay a stipulated sum upon breach, irrespective of the damage sustained."[35]  A liquidated damages provision will not be disturbed when (1)

[33] *Delaware Bay*, 900 A.2d at 650.

[34] *See Bhaskar S. Palekar, M.D., P.A. v. Batra*, 2010 WL 2501517, at *6 (Del. Super. Ct. May 18, 2010) (citations omitted) ("Liquidated damages provisions are presumptively valid . . . . Public policy requires the Court to determine whether the liquidated damages provision is the parties' best estimate of unascertainable damages or is a penalty designed to prevent a party from breaching the contract."); *see also Faw, Casson & Co., L.L.P. v. Halpen*, 2001 WL 985104, at *2 (Del. Super. Ct. Aug. 7, 2001) (holding that the amount of liquidated damages must be "a reasonable forecast of harm and not a penalty."); *S.H. Deliveries, Inc. v. Tristate Courier & Carriage, Inc.,* 1997 WL 817883 (Del. Super. Ct. May 21, 1997) ("It is, in effect, the parties' best guess of the amount of injury that would be sustained in a contractual breach, a way of rendering certain and definite damages which would otherwise be uncertain or not easily susceptible of proof."); *Picotti's Rest. v. Gracie's, Inc.,* 1988 WL 15338, at *1 (Del. Super. Ct. Feb. 23, 1988) (citations omitted) ("Parties to a contract may agree to the damages that are to be paid as compensation for a breach. Such stipulated sum is enforceable if not a penalty.").

[35] *Delaware Bay*, 900 A.2d at 651; *see generally* 14 Williston on Contracts § 42:1 (4th ed.) ("A penalty . . . involves the enforcement of an obligation to pay an amount fixed by law or agreement of the parties as a punishment for the failure to fulfill some primary obligation."); *Palekar*, 2010 WL 2501517, at *6; *S.H. Deliveries,* 1997 WL 817883, at *1.

damages are uncertain, and (2) the amount agreed upon is reasonable based on the anticipated loss and difficulty of calculating that loss.[36] The reasonableness of liquidated damages is assessed at the time of contracting and not at the time of breach.[37]

(19) Here, without considering other factors, the parties do not appear to dispute that the $100,000 liquidated damages provision in Barton's employment agreement is reasonable. But there are other considerations. Although Barton does not contest the reasonableness of the $100,000 liquidated damages amount, she claims that because Seaside "sold its assets to AmSurg prior to Barton's final day of employment with [Seaside] on May 28, 2021, and Caruso is prohibited from operating [Seaside] during his employment, Barton never competed."[38] Therefore, Barton argues, "enforcement of the liquidated damages provision must be a penalty because it cannot be reasonably tethered to a legitimate business interest."[39] Seaside responds that Barton "did in fact engage in competition with Plaintiff as she began working at Beebe on June 21, 2021, and Plaintiff's business continued to operate until he commenced employment with [AmSurg] on July 18, 2021."[40]

---

[36] *See Lee Builders, Inc. v. Wells*, 103 A.2d 918, 919 (Del. Ch. 1954).
[37] *See S.H. Deliveries*, 1997 WL 817883, at *2.
[38] Answering Br. at 10-11.
[39] *Id.*
[40] Reply Br. at 8.

(20)   In their appellate briefing, the parties have muddled the framework for evaluating the consequence of Seaside's status as an operating entity. It is, however, unnecessary for us to decide whether Barton actually breached the non-compete, whether her competition actually caused Seaside damages, or whether a liquidated damages provision acts as a penalty when the medical practice-employer no longer has a financial interest to protect. On appeal, the parties have narrowed their dispute to a threshold issue – whether Seaside was an operating entity at the time Barton started to compete with Seaside. If Seaside was still an operating entity and continued to see patients post-Bill of Sale, Barton does not appear to contest that Barton breached the non-compete, and the liquidated damages provision is reasonable and can be enforced.

(21)   Although the Superior Court found that Seaside ceased operations before Barton started to compete, the court relied on the ambiguous statements from Seaside's counsel about the status of the practice post-Bill of Sale. In a pre-trial conference transcript, Seaside's counsel made statements about Seaside's status.[41] But it is unclear from counsel's statement what period she was referring to when she stated that Seaside stopped seeing patients:

> THE COURT:   Is Seaside Gastroenterology Consultants still competing?

---

[41] A116.

11

MS. ALLEN:  Is Seaside -- no, Seaside -- it is still -- Caruso, PA, operating as Seaside still is in existence, but is no longer seeing patients. But it is still an active company, still an active PA . . . . Seaside Gastro is not operating.[42]

(22)   At the pretrial conference, Seaside's attorney also stated that "[Caruso] didn't sell the practice, your Honor.  The only thing he sold was the bill of sale -- and I wasn't involved in that -- is the bill is the furniture and the equipment."[43]  In other words, Seaside sold furniture and equipment, but not the practice.  In the reply brief in this appeal, Seaside's counsel stated that "Defendant did in fact engage in competition with Plaintiff as she began working at Beebe on June 21, 2021, and Plaintiff's business continued to operate until he commenced employment with EHG GI DE, P.C. on July 18, 2021."[44]

(23)   Other than statements from Seaside's counsel, which are unclear, we cannot discern from the record when Seaside ceased seeing patients following the Bill of Sale.  Thus, a disputed issue of material fact exists, and summary judgment was premature.  Given the unique circumstances of this case, we reverse the Superior Court's decision granting summary judgment to Barton and remand for the limited purpose for the Superior Court to make a definitive factual finding when Seaside ceased seeing patients following the Bill of Sale.  The court can decide the issue in

---

[42] B32 (Super. Ct. Tr. of Pre-Trial Hearing, at 8:7-23, 9:1).
[43] Tr. of Pretrial Conference at 6:15-18, *Caruso v. Barton*, No. N21C-10-248 (Del. Super. Jan. 25, 2023), Dkt. No. 42.
[44] Reply Br. at 8.

12

any manner it sees fit, including through written factual submissions or a short evidentiary hearing.  If the court determines that Seaside ceased seeing patients before Barton started work for the competing practice, then Barton did not compete against Seaside and liquidated damages would not be owed.  If Seaside continued to see patients after the Bill of Sale was executed, and while Barton started work for the competing practice, then Barton is required to pay the liquidated damages.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is REVERSED and the case is REMANDED for further proceedings consistent with this Order.  Jurisdiction is not retained.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice