NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4244
_____

CATO CAPITAL LLC,
a Connecticut Limited Liability Company,
Appellant

v.

HEMISPHERX BIOPHARMA INC.,
a Delaware Corporation;
THE SAGE GROUP, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. Civ. Action No. 1-09-cv-00549)
District Judge: Honorable Gregory M. Sleet
_____

Argued: July 16, 2015
_____

Before: SMITH, GREENAWAY, JR., and SHWARTZ, *Circuit Judges*.

(Filed: August 21, 2015)


John L. Reed [ARGUED]
DLA Piper
1201 North Market Street
Suite 2100
Wilmington, DE 19801
    *Counsel for Appellant*

James J. Black, III [ARGUED]
Mark W. Drasnin, Esq.
Black & Gerngross
1617 John F. Kennedy Boulevard
Suite 1575
Philadelphia, PA 19103

Christopher P. Simon, Esq.
Cross & Simon
1105 North Market Street
Suite 901
Wilmington, DE 19801
    *Counsel for Appellees*

_____

OPINION*
_____


GREENAWAY, JR., *Circuit Judge*.

Plaintiff-Appellant Cato Capital, LLC ("Cato") appeals from the final judgment entered by the District Court in favor of Defendant-Appellee Hemispherx Biopharma, Inc. ("Hemispherx") on Cato's breach of contract claim. Cato, an investment bank, sued Hemispherx, a biopharmaceutical company and former client, to recover a placement fee after several companies invested millions of dollars in Hemispherx—notwithstanding the fact that: (1) Cato did not facilitate these investments, and (2) these transactions closed after Cato's engagement with Hemispherx had expired. After a bench trial, the District Court held: (1) that Cato had not satisfied a condition precedent to payment under the

2

contract, and (2) that Cato was not entitled to payment under the contract because Cato did not cause the investments. *See Cato Capital LLC v. Hemispherx Biopharma, Inc.*, 70 F. Supp. 3d 607 (D. Del. 2014). We agree that Cato did not satisfy a condition precedent to payment and will affirm the District Court.[1]

## I.   BACKGROUND

### A.   Factual History

#### 1.   The Beginning of the Engagement

In late 2008, Cato was introduced to Hemispherx by Hemispherx's advisor, The Sage Group, Inc. ("Sage"). Hemispherx and Cato entered into a non-exclusive contract ("the Agreement") whereby Cato would serve as Hemispherx's "financial adviser and placement agent, in connection with facilitating debt and equity financings for [Hemispherx]" for a term beginning November 24, 2008 and ending March 24, 2009. JA 0094-95. The Agreement also provided for an additional eight-month period after the expiration of the term of the engagement (the "Tail Period"), during which time, if Hemispherx closed a transaction with any investor introduced to Hemispherx by Cato (a "Tail Period transaction"), Hemispherx would be obligated to pay Cato a "Placement Fee" under certain conditions. JA 0095.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Because Cato must succeed on both arguments on appeal in order to reverse the District Court's judgment, and because we conclude that Cato did not fulfill a condition precedent to payment under the contract, we need not reach Cato's causation argument.

Specifically, Paragraphs 2(b) and 2(c) of the Agreement required Cato to provide to Hemispherx two separate lists of potential investors (the "Cato Prospects"). They provided in relevant part:

> (b)      Payment of Fees: All applicable fees shall be payable . . . with respect to any Transaction completed with any Cato Prospect during . . . (ii) the eight month period (the "Tail Period") following the term of this Agreement. **At the end of the term of this Agreement, Cato shall designate in writing to the Company all Cato Prospects. Cato will only be entitled to Placement Fees for Transactions during the Tail Period completed with any of the listed Cato Prospects or their affiliates.**
>
> * * *
>
> (c)      . . . . **Following the execution of this Agreement, Cato will immediately provide Company with a list of Cato Prospects which will be immediately reviewed by Company and once agreed, Cato Prospects will be attached to this agreement as appendix A.**

*Id.* (emphasis added).

The day the Agreement was executed, Cato submitted a list of Cato Prospects (the "Paragraph 2(c) list") for approval. Hemispherx approved the list and appended it to the Agreement. Days later, Cato sought and received approval for several additional prospects. The Cato Prospects included Hudson Bay Capital Management LP ("Hudson Bay"), Iroquois Capital ("Iroquois"), and Cranshire Capital LP ("Cranshire").

Within the next two weeks, Cato sent Iroquois, Cranshire, and Hudson Bay an email outlining a proposed transaction. Cato, however, failed to secure any suitable offers and had no further contact with these prospects.

4

2.    Updated Prospects and the End of the Term

On January 5, 2009, Cato submitted the names of additional investors for Hemispherx's approval. Hemispherx, through Sage,[2] approved the investors the next day and requested a "full list, updated," of all Cato Prospects. Cato sent the requested list on January 7, 2009. The list included, inter alia, Iroquois, Hudson Bay, and Cranshire.

On March 24, 2009, the term of the Agreement ended with Cato having failed to secure any funding for Hemispherx. Cato did not submit a Paragraph 2(b) list of Cato Prospects at that time.

3.    The Tail Period

In late April, Rodman and Renshaw Capital Group ("Rodman") contacted Hemispherx because of the increased market interest in companies—like Hemispherx—with products capable of treating influenza. Rodman believed that Hemispherx could raise capital through an equity offering in this climate, and the two executed an engagement letter in early May. Soon thereafter, Hudson Bay, Cranshire, and Iroquois collectively invested $23.5 million in Hemispherx with Rodman acting as facilitator.

On May 22, 2009, Cato sent Hemispherx a demand letter seeking fees for the transactions that Hemispherx had concluded with Hudson Bay, Iroquois, and Cranshire. Hemispherx refused to pay Cato because it had not submitted a Paragraph 2(b) list and had not facilitated these transactions.

---

[2] Sage acted as Hemispherx's intermediary for most communications with Cato.

**B. Procedural History**

Cato filed suit in the District Court against Hemispherx alleging, inter alia, breach of contract, and against The Sage Group alleging fraud and intentional interference with a contractual relationship. After a three-day bench trial, the District Court ruled against Cato on all counts. Cato timely appealed only the breach of contract of claim, arguing: (1) that it substantially complied with Paragraph 2(b)'s requirement by sending the updated list of prospects in January 2009, and (2) that the Agreement entitles Cato to payment for any transaction consummated with a Cato Prospect during the Tail Period, regardless of whether Cato caused the transaction.

**II. ANALYSIS[3]**

We review a district court's findings of fact following a bench trial under the clearly erroneous standard and exercise plenary review over its conclusions of law. *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). Under Delaware law,[4] contract interpretation is a question of law. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). Generally, whether a party can satisfy the doctrine of substantial compliance is a question of fact. *See Standard Accident Ins. Co. v. Ponsell's Drug Stores, Inc.*, 202 A.2d 271, 275 (Del. 1964).

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and this Court has jurisdiction under 28 U.S.C. § 1291.

[4] The parties agree that Delaware law controls pursuant to Paragraph 3(d) of the Agreement's Terms and Conditions. JA 0100.

A court interpreting a contract must effectuate the parties' intent. *See Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). "Where the contract language is clear and unambiguous," the court must ascertain the parties' intent "by giving the language its ordinary and usual meaning." *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996).

For the reasons below, we conclude: (1) that the Agreement unambiguously required Cato to submit a Paragraph 2(b) list in order to receive payment for Tail Period transactions, and (2) that Cato did not comply with this requirement.

## A.  Condition Precedent

The District Court correctly determined that compliance with Paragraph 2(b) is a condition precedent[5] to payment to Cato for Tail Period transactions. Paragraph 2(b) of the Agreement provides that "[a]t the end of the term of this Agreement, Cato *shall* designate in writing to the Company all Cato Prospects," and notes that "Cato *will only* be entitled to Placement Fees for Transactions during the Tail Period completed with any of the listed Cato Prospects." JA 0095 (emphasis added). This language unambiguously conditions payment for Tail Period transactions on Cato's submission of a list of Cato Prospects at the end of the term of the Agreement. *See Global Energy Fin. LLC v.*

---

[5] "A condition precedent is '[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.'" *AES P.R., L.P. v. Alstom Power, Inc.*, 429 F. Supp. 2d 713, 717 (D. Del. 2006) (alteration in original) (quoting *Seaford Assocs. Ltd. P'ship v. Subway Real Estate Corp.*, No. Civ. A. 2248, 2003 WL 21254847, at *5 n.30 (Del. Ch. May 21, 2003)).

*Peabody Energy Corp.*, No. 08C-10-129 RRC, 2010 WL 4056164, at \*24 (Del. Super. Ct. Oct. 14, 2010) ("no particular words are necessary for the existence of a condition," and any "phrase that conditions performance usually connote[s] an intent for a condition" (internal quotation marks omitted)). Thus, Hemispherx would only be obligated to pay Cato's Placement Fee if Cato submitted a Paragraph 2(b) list.

Cato does not challenge this determination on appeal and effectively concedes that it did not strictly comply with Paragraph 2(b) because it failed to submit a prospect list at the end of term in March 2009. Rather, Cato argues that it substantially complied with Paragraph 2(b) by submitting an "updated" prospect list in January.

**B.     Substantial Compliance**

1.     The Agreement requires two separate prospect lists

Contrary to Cato's argument, the Agreement unambiguously requires two separate lists of Cato Prospects, and a single list submitted substantially before the end of the term cannot fulfill the requirements of both Paragraphs 2(b) and 2(c).

Under Delaware law, a court must "give each provision and term effect, so as not to render any part of the contract mere surplusage." *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010). "Contractual interpretation operates under the assumption that parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court." *Nama Holdings LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del Ch. 2007).

8

Paragraph 2(c) of the Agreement required Cato, upon execution of the Agreement, to "*immediately provide* . . . a list of Cato Prospects" to be approved by Hemispherx and appended to the Agreement, while Paragraph 2(b) required Cato to "designate in writing . . . all Cato [P]rospects" "*[a]t the end of the term* of [the] Agreement" in order to receive payment for Tail Period transactions. JA 0095 (emphasis added). Thus, the Agreement contemplated two separate lists with two distinct purposes to be delivered at two different times pursuant to Paragraphs 2(b) and 2(c). Accordingly, each provision must be given independent effect.

      2.      Permitting a Paragraph 2(c) list to satisfy Paragraph 2(b) renders Paragraph 2(b) superfluous

The District Court reasonably determined that the Cato Prospects list submitted in January 2009 was intended to fulfill the requirements of Paragraph 2(c) rather than Paragraph 2(b).[6] Cato nevertheless argues that the January 2009 list provided actual notice of the prospects for which Cato would seek payment and thus rendered submission

---

[6] It is undisputed that on November 24, 2008, the day the Agreement was executed, Cato submitted a list of prospects for Hemispherx's approval pursuant to Paragraph 2(c). Approximately one week later Cato sought and received Hemispherx's approval to include several additional prospects on this list. Then, on January 5, 2009, Cato again sought permission to add prospects to the list. The next day, Hemispherx approved the "new [t]argets" and requested a "full list, updated," and Cato provided the updated list as requested. JA 0103. Under these circumstances, the District Court did not err in concluding that the January 2009 list—provided two and a half months before the end of the term—was intended to fulfill Paragraph 2(c) rather than Paragraph 2(b). This conclusion is buttressed by the fact that Cato noted in its demand letter to Hemispherx only that Cato had provided a "Section 2(c) . . . list [that was] reviewed and accepted by

9

of a Paragraph 2(b) list at the end of the term "redundant." Appellant's Br. at 13.

However, Cato's argument that submission of the Paragraph 2(c) list fulfilled the requirements of Paragraph 2(b) plainly renders Paragraph 2(b) of the Agreement superfluous—an "updated" Paragraph 2(c) list would *always* render submission of a Paragraph 2(b) list redundant. Accordingly, we reject Cato's substantial compliance argument because it "would result in a conclusion that some terms [of the Agreement] are uselessly repetitive." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del. 2001).

In sum, Cato failed to comply with Paragraph 2(b) and thus is not entitled to payment for any Tail Period transactions.

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

---

[Hemispherx]." JA 0124. It was not until the onset of litigation that Cato argued that the January 2009 list was intended to fulfill the requirements of Paragraph 2(b).

10