# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| UNBOUND PARTNERS LIMITED PARTNERSHIP, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. N20C-09-302 PRW CCLD |
| INVOY HOLDINGS INC., | ) ) | |
| Defendant. | ) | |

Submitted: February 4, 2021
Decided: March 17, 2021

*Upon Plaintiff Unbound Partners Limited Partnership's Motion for Summary Judgment or, in the Alternative, Motion for Default Judgment*
**DENIED**

*Upon Defendant Invoy Holdings Inc.'s Motion to Dismiss*
**DENIED**

## OPINION AND ORDER

William M. Lafferty, Esquire (Argued), Alexandra Cumings, Esquire, Michael J. Slobom, Jr., Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Leo G. Kailas, Esquire, Paul V. LiCalsi, Esquire, REITLER KAILAS & ROSENBLATT LLC, New York, New York, *Attorneys for Plaintiff Unbound Partners Limited Partnership*.

Steven J. Fineman, Esquire, Travis S. Hunter, Esquire (Argued), Tyler E. Cragg, Esquire, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Defendant Invoy Holdings Inc*.

**WALLACE, J.**

Delaware's Rules of Civil Procedure open with a clear, but nonetheless tall, mandate: Courts must construe them to foster "the just, speedy and inexpensive" resolution of each case.[1] When doing so, Delaware's judicial officers enjoy wide discretion to sculpt procedural law nimbly. To do so, this Court and its siblings' judges have drawn on experience, intuition and commonsense. And, in doing so, each court has developed its own "practices" that—though not spelled-out in code— are customarily followed in the creative art of case-specific decision-making. It's rarely, if ever, asked that one of us second-guess another's specific case-management process or use another's practice to chisel a certain rule's and statute's contours to sharp an unyielding relief that a party envisions as forming fairness for it alone. One party here, however, asks the Court to do just that.

In the main, this breach of promissory note action invites the Court to decide whether some of the damages Unbound Partners Limited Partnership seeks are due or are instead an unenforceable penalty. But here, at the threshold, Invoy Holdings Inc.'s motion to dismiss just a single count of Unbound's complaint poses a novel procedural question. To get to the substance of Invoy's motion, the Court must labor with this issue raised by Unbound's combined motion for summary and default judgment: Does a defendant named in a complaint brought via 10 *Del. C.* § 3901

---

[1] Del. Super. Ct. Civ. R. 1; Del. Ch. R. 1; Del. Fam. Ct. Civ. R. 1; Del. Ct. Com. Pl. Civ. R. 1; Del. J.P. Ct. Civ. R. 1.

concede or default on the allegations against it by moving to dismiss under Rule 12 only one of the complaint's counts without first answering the complaint, in whole or in part, by affidavit? Put broadly, the Court must determine whether that motion for partial dismissal tolls the answering period for both the challenged and unchallenged claims.

Title 10, Section 3901 of the Delaware Civil Code, which obliges defendants in note actions to answer by affidavit, does not speak of pre-answer motions. Rule 12(a) does so speak, but not of those motions that seek only "partial" dismissal. Yet, Delaware courts routinely entertain motions for partial dismissal—*i.e.*, motions aimed at only one or more of the defective counts in a complaint. They can be economizing tools that, in a suit's early stages, hew meritless counts out of otherwise adequately-pleaded complaints.

For the reasons explained more fully later, the Court holds that motions for partial dismissal filed under Rule 12(b) toll the period for answering the entire complaint. As a result, a defendant does not concede—or default on—a complaint, as a matter of law, when moving against only some of that complaint before answering any of it or the remainder. And so, when read together, § 3901's answer-by-affidavit requirement is inapplicable both to challenged and unchallenged claims until a pre-answer Rule 12(b) motion is resolved. In short, the answer to Unbound's question is no.

To be sure, simply because defendants are not *required* to simultaneously answer allegations left untouched by their partial dismissal motions does not mean a court is powerless to so order their answer where warranted. If a court finds moving-and-answering to be appropriate or necessary, then it is certainly free to shape a matter's schedule thusly. Indeed, many cases—whether brought under § 3901 or not—might erode the just, the speedy and the inexpensive without such sculpting. This, though, is not one of those cases; Invoy's motion without answer or affidavit is proper. Accordingly, the Court **DENIES** Unbound's motion for entry of judgment that—without real procedural reinforcement—requests relief unwarranted and premature.

Success in that procedural skirmish doesn't necessarily bring a win for Invoy on the merits of its dismissal motion, however. Delaware is a pro-contractarian state, and her law is loath to deter bilateral negotiation. Though deference to sophisticated counterparties' deals may not be limitless, Delaware courts will not so quickly find a voluntary agreement unenforceable. And this Court is certainly hesitant to do so upon a motion to dismiss. It may well be that the provision Invoy disputes is an unenforceable penalty. But the complaint supports the reasonable inference that it is not. Accordingly, the Court **DENIES** Invoy's motion for partial dismissal as well.

# I. FACTUAL BACKGROUND

## A. THE LOAN.

Invoy is a startup that once had been fundraising to complete its Series B Financing phase.[2] To that end, Unbound, one of Invoy's equity investors, offered to supply Invoy $2 million in capital through a short-term bridge loan.[3] Invoy accepted.[4] On March 9, 2020, these counterparties memorialized the debt in a promissory note agreement (the "PNA").[5] Unbound credited Invoy one day later.[6]

Relevant here are the following terms. The PNA defines "Principal" as $2 million.[7] "Interest" is defined as the greater of the number produced by a fixed 10% annual rate, and a flat fee of $300,000.[8] Invoy agreed to pay Principal and applicable Interest on or before July 31, 2020—the debt's "Maturity Date."[9] Failure to pay by the Maturity Date despite written notice and a five-day cure period constitutes an

---

[2] Complaint ¶¶ 2, 5, 7 (D.I. 1) ("Compl.").

[3] *Id.* ¶¶ 1, 6, 8-9.

[4] *Id.* ¶ 10.

[5] *Id.*; *see generally* Exhibit A, Promissory Note Agreement (D.I. 2) (hereinafter, the "PNA").

[6] Compl. ¶ 19.

[7] PNA § 1(a).

[8] *Id.* § 1(b).

[9] Compl. ¶¶ 12-14, 20; PNA §§ 1(b)-(c). The original Maturity Date was June 30, 2020 before the parties later agreed to a 31-day extension. *See* Exhibit B, PNA Amendment § 1 (D.I. 2).

"Event of Default."[10]  If an Event of Default occurs, then Unbound may elect one of two rights: (1) acceleration combined with a multiplier that doubles Principal in lieu of any Interest; or (2) conversion of the outstanding balance into an equivalent amount of senior-preferred Invoy stock.[11]  Central to the parties' motions is option (1): the "Double Principal Option."

In its own words, the Double Principal Option declares –

> Unbound may, at its discretion, by notice in writing to Invoy . . . require that Invoy immediately pay Unbound an amount equal to two times the outstanding Principal hereunder in lieu of accrued Interest.[12]

"For the avoidance of doubt," the Option then continues with an example illustrative of this dispute:

> If Unbound loans two million dollars ($2,000,000) to Invoy . . . and Invoy does not repay Unbound $2,000,000 plus Interest on or before the Maturity Date, then Invoy will owe $4,000,000 to Unbound.[13]

The Maturity Date apparently came and went.[14]  On August 1, 2020, Unbound sent Invoy written notice of default.[15]  In that notice, Unbound informed Invoy that

---

[10]  Compl. ¶¶ 15, 17; PNA §§ 3(a), (f).

[11]  Compl. ¶¶ 15-16; PNA §§ 3, 4(a)(i)-(ii).

[12]  PNA § 4(a)(i) (cleaned up).

[13]  *Id.* (cleaned up).

[14]  Compl. ¶ 22.

[15]  *Id.* ¶ 25; *see generally* Exhibit C, Notice of Breach (D.I. 2).

it would exercise the Double Principal Option unless Invoy timely repaid.[16] Invoy allegedly didn't repay and hasn't remitted a cent since.[17] So, Unbound sued.

## B. THE LAWSUIT.

Unbound filed its complaint with an invocation of 10 *Del. C.* § 3901 right up front.[18] That notation states: "all allegations . . . must be answered by affidavit in accordance with . . . 10 *Del. C.* § 3901."[19] The complaint then divides the allegations into "two" breach-of-contract claims.[20] Count I asserts $4 million plus pre-judgment interest in damages.[21] "In the alternative," Count II asserts $2.3 million plus pre- and post-judgment interest in damages.[22] The bases for each count are substantively identical. The only difference between them is that Count I seeks payment under the Double Principal Option, while Count II computes what Invoy would owe but for the Option.[23]

---

[16] Compl. ¶ 26.

[17] *Id.* ¶¶ 27-28.

[18] *See id.* Caption.

[19] *Id.*

[20] *Id.* ¶¶ 30-45.

[21] *Id.* ¶¶ 30-37 & Prayer for Relief § (a).

[22] *Id.* ¶¶ 38-45 & Prayer for Relief § (b).

[23] *Compare* PNA § 1(c) *with id.* §§ 3, 4(a)(i). A simple interest calculation illustrates that the amount Unbound could recover at 10% interest per year by Maturity (*i.e.*, roughly 4.5/12) is less

Invoy did not file an answer to any of Unbound's accusations. Instead, Invoy moved to dismiss Count I under Rule 12(b)(6).[24] According to Invoy, Count I's damages are tied to an unenforceable penalty (*i.e.*, the Double Principal Option) and thus cannot be recovered without violating Delaware public policy.[25] Invoy noted that it will "address" Count II after the Court thumbs Count I's fate.[26]

In opposition, Unbound has moved for summary judgment, "or, in the alternative," for default judgment, arguing that, under 10 *Del. C.* § 3901, Invoy's choice not to answer the allegations before filing its motion works a complete concession of liability, or at least, should be deemed a failure to defend.[27] Procedure aside, Unbound contends that the Double Principal Option requires no penalty analysis. But, Unbound says, if it is subjected to such an examination, the Double Principal Option is a valid expression of liquidated damages.[28]

The Court has heard argument on both parties' motions and they are now ripe for decision.

---

than $300,000. But since the PNA provides for the greater of the two, $2.3 million is what Unbound would recover without the Double Principal Option.

[24] Invoy Mot. (D.I. 7).

[25] *Id.* at 4-10.

[26] *Id.* at 10 n.4.

[27] Unbound Opening Br. at 8-13, 20-24 (D.I. 9) ("Unbound Op. Br.").

[28] *Id.* at 13-20.

## II. STANDARDS OF REVIEW

### A. MOTION TO DISMISS.

A party may move to dismiss under this Court's Civil Rule 12(b)(6).[29] In considering a motion to dismiss, the Court (1) accepts as true all well-pleaded factual allegations; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[30] Delaware's pleading standard is "minimal."[31] Dismissal is inappropriate unless "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[32] Put differently, a claim targeted for dismissal will survive if "a possibility of recovery" can be divined from it.[33]

---

[29] *See* Del. Super. Ct. Civ. R. 12(b)(6) ("[T]he following defense[] may at the option of the pleader be made by motion[:] failure to state a claim upon which relief can be granted. . . .").

[30] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[31] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

[32] *inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *4 (Del. Super. Ct. Jan. 26, 2021) (internal quotation marks and citations omitted).

[33] *Firefighters' Pension Sys. of City of Kan. City, Mo. Tr. v. Presidio, Inc.*, 2021 WL 298141, at *15 (Del. Ch. Jan. 29, 2021) (internal quotation marks and citations omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility. . . .'").

That said, the Court won't strain to pull claim-saving interpretations from the complaint.[34] Too, "the benefits of liberal construction afforded a non-movant do not extend to 'conclusory allegations that lack specific supporting factual allegations.'"[35] And so, the Court will dismiss "if the non-movant fails to plead specific allegations supporting an element of its claim or where no reasonable, *i.e.*, unstrained, interpretation of the facts alleged reveals a remediable injury."[36]

## B. SUMMARY JUDGMENT.

"Summary judgment is appropriate where the record demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[37] But, summary judgment will not be granted if "a material fact is in dispute" or "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[38] The burden is

---

[34] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001); *see Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (The Court need not draw "unreasonable inferences in favor of the non-moving party."), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[35] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Ct. Jan. 13, 2021) (quoting *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[36] *Surf's Up*, 2021 WL 117036, at *6 (citations omitted).

[37] *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Ct. Sept. 1, 2020) (quoting Del. Super. Ct. Civ. R. 56(c)).

[38] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962).

on the movant to demonstrate its claim is supported by undisputed facts.[39]  If that

burden is met, then the non-moving party must show "there is a genuine issue for

trial."[40]  And in determining whether there is, the Court views the facts in the light

most favorable to the non-moving party.[41]

Generally, "a matter should be disposed of by summary judgment whenever .

. . a trial is unnecessary."[42]  Still, the Court has "discretion to decline to decide the

merits of the case in a summary adjudication" where it is not "reasonably certain

that there is no triable issue."[43]  And again, the Court will deny summary judgment

as a prudential matter if the record has not been developed thoroughly enough to

permit correct use of the law.[44]  Finally, the Court may deny summary judgment—

---

[39]  *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[40]  Del. Super. Ct. Civ. R. 56(e); *Parexel*, 2020 WL 5202083, at *5 ("The moving party must establish that the undisputed facts support [its] claims or defenses, after which the burden shifts to the non-moving party to demonstrate that there are material issues of fact to be resolved at trial." (internal quotation marks omitted)); *see Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[41]  *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977).

[42]  *Jeffries v. Kent Cty. Vocational Tech. Sch. Dist. Bd. of Educ.*, 743 A.2d 675, 677 (Del. Super. Ct. 1999).

[43]  *Parexel*, 2020 WL 5202083, at *4 (citing *Cross v. Hair*, 258 A.2d 277, 278 (Del. 1969)).

[44]  *Ebersole*, 180 A.2d at 270; *see Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1227-28 (Del. Ch. 2000) ("[T]he Court also maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application." (citing *Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918-19 (Del. 1965))).

even if its requirements seem to be met—where "a trial record is necessary in the interests of justice."[45]  For, indeed, "[t]here is no 'right' to summary judgment."[46]

## III.  DISCUSSION

If Invoy's motion isn't procedurally proper, the Court can't reach its merits.[47] The Court must, then, start with § 3901.  In its combined motion, Unbound contends two things: (1) that § 3901 renders Rule 12 pre-answer motions improper; and, (2) even if § 3901 doesn't make all Rule 12 pre-answer motions improper, it does make Rule 12 pre-answer motions for only partial dismissal improper.  Neither is right.

### A.  INVOY'S PARTIAL MOTION TO DISMISS IS PROCEDURALLY PROPER.

#### 1. Section 3901 Governs Answers, Not Pre-Answer Motions.

Title 10, Section 3901 of the Delaware Civil Code imposes technical demands on defendants to promissory note lawsuits.  Among those obligations is that the defendant must answer by affidavit.   The statute provides:

> In all actions upon notes . . . the plaintiff may specifically require the defendant . . . to *answer* any or all of the complaint by an affidavit setting forth the specific nature of any defense . . . by

---

[45]  *Williams Cos., Inc. v. Energy Transfer LP*, 2020 WL 3581095, at \*2 (Del. Ch. July 2, 2020) (citing *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002)).

[46]  *Brechner v. Phoenix Network Sols. LLC*, 2017 WL 5953517, at \*4 (Del. Super. Ct. Dec. 4, 2017) (citing *Cross*, 258 A.2d at 278).

[47]  *See, e.g.*, *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 141 (Del. 2012) (instructing that a trial court should first decide whether statutory and procedural requirements are satisfied before reaching the substance of a dispute).

-11-

the specific notation on the face of the complaint that those allegations must be *answered* by affidavits.[48]

The purpose of § 3901's answer-by-affidavit requirement "is to dispose of legally uncontested matters quickly."[49] That is so because creditors' time-sensitive repayment interests or rights in collateral may be further impaired by trifling litigation invoking frivolous or invalid defenses.[50] As a result, the statute empowers the Court to deem allegations admitted, and relatedly, to enter a default judgment, if a defendant fails to comply strictly with the statute's terms.[51]

But, though "legally uncontested matters" should be disposed quickly, the Court can't know if a matter is "legally uncontested" until the legal contest is actually joined—*e.g.*, by an answer admitting, denying or defending the allegations. So, by its own terms, the logic that animates § 3901's answer-by-affidavit requirement plainly does not obtain until the moment the defendant "responds to the designated allegations by affidavit filed *with [its] answer or answers*[.]"[52] Indeed,

---

[48] DEL. CODE ANN., tit 10, § 3901(a) (2020) (emphasis added).

[49] *Wilmington Tr. Co. v. Thielemann*, 2002 WL 31814946, at *2 n.2 (Del. Super. Ct. Nov. 27, 2002) (citation omitted).

[50] *See First Fed. Sav. & Loan Ass'n of Phila. v. Damnco Corp.*, 310 A.2d 880, 882 (Del. Super. Ct. 1973) ("An object of [§ 3901] is to assure speedy disposition of claims of the type specified . . . by permitting defenses only in those instances where a defendant states under oath that he believes he has a valid defense[.]" (citation omitted)).

[51] DEL. CODE ANN., tit 10, § 3901(d).

[52] *Id.* (emphasis added).

the statutory text does not contemplate judicial action, waiver or forfeiture unless the defendant (1) fails to meet the answering deadline or (2) does meet the deadline, but deficiently.[53] That answering deadline, though, isn't found in § 3901. And, while § 3901 mentions complaints and answers, it says nothing of pre-answer motions. It is Civil Rule 12 that provides guidance on these.

Under Rule 12(a), the deadline for answering a complaint ordinarily is measured by reference to either the complaint's service or to a Rule 12 pre-answer motion's outcome.[54] And where, as here, a defendant has submitted a Rule 12(b) pre-answer motion, the answering deadline is tolled until, and subsequently clocked from, that motion's resolution.[55] This is equally so in § 3901 actions, which Rule 12(a) expressly incorporates:

> If the plaintiff has made a specific notation under Rule 3(b) [*i.e.*, our rule addressing § 3901 actions] requiring the defendant to answer any or all allegations . . . by affidavit . . . the defendant

---

[53] *Id.* (If "the defendant . . . fails to respond to the designated allegations by affidavit filed with the answer or answers, the designated allegations will be deemed admitted, and default judgment may be entered thereon, in the discretion of the court and upon motion by the plaintiff."); *see, e.g.*, *Gillette v. Wilmington Sav. Fund Soc'y, FSB*, 2020 WL 7861341, at *2 (Del. Dec. 31, 2020) (deeming answer in a § 3901 action that "contained general denials" and "[n]either set forth the specific nature or character of any defense" deficient and affirming grant of summary judgment); *Bank of Am., N.A. v. Yarborough*, 2020 WL 2511430, at *2-3 (Del. Super. Ct. May 15, 2020) (granting default judgment in a § 3901 action to mortgagee when mortgagor "did not answer the complaint despite personal service" and the time for doing so expired).

[54] Del. Super. Ct. Civ. R. 12(a).

[55] *See id.* R. 12(a)(1) ("The service of a motion permitted under [Rule 12(b)] alters [answering] periods as follows. . . . If the Court denies the motion . . . the responsive pleading [*i.e.*, the answer] shall be served within 10 days after notice of the Court's action.").

shall, *not later than the time for serving an answer*, serve either an affidavit of defense in conformity with [§ 3901] or a motion that judgment be refused notwithstanding the plaintiff's complaint[.][56]

Together, a defendant's duty to "answer . . . the complaint by an affidavit"[57] is not triggered under § 3901 until "the time for serving an answer"[58] arrives under Rule 12(a). Accordingly, Invoy has not yet shirked its answer-by-affidavit duties. Section 3901 itself is unambiguously inapplicable until Invoy's motion is resolved.

Each of the cases on which Unbound relies confirms that § 3901 monitors the sufficiency of answers, not the propriety of pre-answer motions. In those cases, summary judgment was granted or a default judgment entered because the defendant either did not answer *and* did not file a pre-answer motion, or failed to answer specifically enough to satisfy the statute.[59] Unbound hasn't identified a single case

---

[56]   *Id*. R. 12(a).

[57]   DEL. CODE ANN., tit 10, § 3901(a).

[58]   *Id.*

[59]   *See Gillette*, 2020 WL 7861341, at *2-3 (affirming summary judgment because general denial lacked statutory specificity); *Yarborough*, 2020 WL 2511430, at *2, *5 (entering default judgment because defendant did not answer or motion against the complaint at all); *JPMorgan Chase Bank v. Smith*, 2014 WL 7466729, at *2-3 (Del. Super. Ct. Dec. 15, 2014) (entering default judgment because defendant "failed to defend by failing to answer or file an appropriate motion"); *Coppedge v. U.S. Bank Nat'l Ass'n*, 2014 WL 5784006, at *1 (Del. Dec. 19, 2011) (affirming summary judgment because "unintelligible" counterclaim did not meet statutory specificity); *Teeven v. Kearns*, 1993 WL 1626514, at *2, *4 (Del. Super. Ct. Dec. 3, 1993) (treating motion for judgment on the pleadings as a summary judgment motion and granting that motion because the defendant's flat denial of default did not "fulfill the purpose of an affidavit of defense, which is to set forth a legally meritorious defense to the claim" (internal quotation marks omitted)).

in which summary judgment or a default judgment was obtained because a defendant filed a pre-answer motion to dismiss instead of answering by affidavit.[60] Perhaps recognizing this, Unbound tries to suggest that pre-answer motions themselves are "defenses" for § 3901 purposes and thus deficient if not sworn by an affidavit.[61] Not so. Section 3901 "defenses" are those that typically would be enumerated in Rule 12(a) answers.[62] More important, if the Court accepted Unbound's interpretation, then a defendant never could file a pre-answer motion against a § 3901 complaint— the defendant would always be required to answer in some way. No doubt, if the General Assembly intended to except § 3901 complaints from early dismissal, it would have plainly said so. It didn't.[63] And the Court will not import an irrational

---

[60] Contrary to Unbound's suggestion (Unbound Op. Br. at 13), *Bayer-Highland Fam. P'ship, Ltd. v. RF Cap. Holdings, LLC*, 2018 WL 3129317 (Del. Ch. June 25, 2018), was not such a case. There, the Court of Chancery merely denied a motion to stay. *Id.* at *1. The court admonished the plaintiffs for citing "the pleadings-stage motions as a basis for declining to answer allegations in the defendant's pleadings" because the case involved an expedited corporate control dispute. *Id.* at *2. In short, the case didn't concern § 3901 at all.

[61] *See, e.g.*, Unbound Reply Br. at 10-11 n.5, Jan. 20, 2021 (D.I. 13) (citing DEL. CODE ANN. § 3901(b)).

[62] DEL. CODE ANN. § 3901(a) (Defendant must "answer . . . by an affidavit setting forth the specific nature and character of any defense[.]").

[63] *See id.* § 3901(i) (directing Delaware courts to follow their Civil Rules when taking action under the statute).

design into a statute where "one among possible interpretations . . . would produce a reasonable result."[64]

## 2. Pre-Answer Motions for Partial Dismissal Toll the Period for Answering the Whole Complaint without Default; But, a Court Certainly Has the Discretion to Order an Answer to Any Unchallenged Claims.

Invoy's dismissal motion is proper under § 3901's plain language. So, Unbound tries to delimit Rule 12's interplay with that statute. In Unbound's view, even if Rule 12 pre-answer motions seeking complete dismissal are proper in § 3901 actions, motions seeking only partial dismissal aren't.

According to Unbound, a motion for partial dismissal, by definition, leaves the hanging aspects of a § 3901 complaint unchallenged. Because of that, the defendant who moves partially against a § 3901 action simultaneously fails to answer by affidavit the unchallenged counts. Unbound asserts this procedural default as to the unanswered claims infects the defendant's motion against the challenged (but still "unanswered") claims as well. The net effect, Unbound reasons, is that Invoy's partial motion to dismiss failed to toll the time for answering its entire complaint, which, for Invoy, has now long elapsed. Thus, in Unbound's view, Invoy's pre-answer motion for partial dismissal effectively has done nothing but

---

[64] *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1247 (Del. 1985) (citation omitted); *see Moore v. Wilmington Hous. Auth.*, 619 A.2d 1166, 1173 (Del. 1993) (presuming that a statute's natural construction will not foment "mischievous or absurd results").

-16-

delay its suit's prosecution—hence its request that the Court find a full admission of liability or a default on the defense.

Unbound's flailing assault on pre-answer motions for partial dismissal here might lay damage to not just those brought in § 3901 actions. So the Court here must precisely address whether Rule 12 permits a pre-answer motion for partial dismissal to toll the period for answering an entire complaint. It does.

### a. A Rule 12(b)(6) Motion for Partial Dismissal Tolls the Period for Answering the Whole Complaint without a Consequent Default on Those Counts or Claims Untouched By the Motion.

Rule 12 requires defendants to answer the complaint no later than 20 days after being served with it.[65] The Rule also states that filing a pre-answer motion "alters [that] period" and defers it until the Court resolves "the motion."[66] But, Rule 12 speaks of motions—not of those that are "partial." Delaware courts, though, do allow 12(b)(6) motions for partial dismissal so long as they do not seek to just trim down theories within a single claim.[67] Indeed, as a matter of practice, motions for partial dismissal are commonplace. Still, this Court's research reveals no Delaware

---

[65]  Del. Super. Ct. Civ. R. 12(a).

[66]  *Id.* R. 12(a)(1). The Rule grants the Court discretion to modify that timeframe. *Id.* R. 12(a).

[67]  *See inVentiv*, 2021 WL 252823, at \*6 ("Rule 12(b)(6) doesn't permit . . . dismissals of *parts* of claims;" a Rule 12(b)(6) motion must assail an entire claim to be cognizable. (emphasis in original) (internal quotation marks omitted)); *id.* at \*5-6 (collecting authority).

case that expressly passes on whether they too freeze a defendant's answering duties while pending.

Also common are Delaware courts' references to federal precedent interpreting analogue federal rules of civil procedure when speaking on our own.[68] Though there is some divergence of opinion,[69] the majority view of federal courts is that a pre-answer motion for partial dismissal tolls the period for answering the whole complaint and does not occasion default on claims unchallenged by such motion.[70] Proceeding thusly streamlines later filings and proceedings and spares

---

[68] *See Appriva S'holder Litig. Co, LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007) ("Where, as here, the Superior Court's Civil Rules of Procedure closely track the Federal Rules of Procedure, cases interpreting the federal rules are persuasive authority[.]" (citing *Hoffman v. Cohen*, 528 A.2d 1096 (Del. 1988))); *Plummer v. Sherman*, 861 A.2d 1238, 1242 (Del. 2004) ("We note at the outset that the Delaware Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure. We therefore find certain federal cases appropriate for determining the proper interpretation of the Delaware Rules of Civil Procedure."); *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988) ("Decisions interpreting the Federal Rules of Civil Procedure are usually of great persuasive weight in the construction of parallel Delaware rules; however, such decisions are not actually binding upon Delaware courts." (citations omitted)).

[69] *See Gerlach v. Mich. Bell Tel. Co.*, 448 F. Supp. 1168, 1174 (E.D. Mich. 1978) ("Separate counts are, by definition, independent bases for a lawsuit and the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under [Rule] 12(b)."); *see also* Andrea G. Lisenbee & Michael D. Moberly, *To Plead or Not to Plead?: Assessing the Effect of a Partial Motion to Dismiss on the Duty to Answer*, 13 SUFFOLK J. TRIAL & APP. ADVOC. 45, 62 (2008) ("Precisely because Rule 12(b) motions do interrupt discovery in many cases . . . a defendant's submission of a partial motion to dismiss occasionally accomplishes little except to delay the real commencement of litigation." (internal quotation marks omitted)).

[70] *See Jackson v. Carter*, 2017 WL 2426862, at *2 (D.N.J. June 5, 2017) (denying summary judgment motion as "premature" because defendants' "partial motion to dismiss [had] suspended the time to answer" (citation omitted)); *In re Vaughan Co., Realtors*, 477 B.R. 206, 226 (Bankr. D.N.M. 2012) ("The large majority of courts addressing this [tolling] issue have held that when a defendant timely files a motion to dismiss . . . [time is extended] to file an answer as to all claims, including those not addressed by the motion to dismiss. . . . This Court agrees with that holding." (citations omitted)); *Cir. City Stores, Inc. v. Citgo Petroleum Corp.*, 1994 WL 483463, at *4 (E.D.

parties the expense of "exploring the factual predicate for claims that have no legal merit."[71]   Whereas, if "[a] partial motion[] to dismiss did not suspend a party's obligation to reply to additional claims, the result would be a procedural thicket of piecemeal answers that would poorly serve judicial economy."[72]   Having a defendant answer unchallenged counts and then file a second answer should her motion for partial dismissal be denied might compel the Court to evaluate redundant

---

Pa. Sept. 7, 1994) (denying motion for default judgment because "a partial 12(b) motion enlarges the time to file an answer"); *accord Dotson v. DISH Network, L.L.C.*, 2019 WL 3483806, at *3 (S.D. Ga. July 31, 2019) (same); *Iraheta v. Equifax Info. Servs., LLC*, 2018 WL 3381419, at *2-3 (W.D. La. July 10, 2018) (same); *Neal v. Neal*, 2018 WL 1335985, at *2 (D. Ariz. Mar. 15, 2018) (same), *aff'd*, 745 F. App'x 683 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 66 (2019); *Fed. Contracting, Inc. v. United States*, 128 Fed. Cl. 788, 797-98 (2016); *Talbot v. Sentinel Ins. Co., Ltd.*, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (same); *Thermolife Int'l LLC v. Gaspari Nutrition Inc.*, 2011 WL 6296833, at *5 (D. Ariz. Dec. 16, 2011) (same); *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 366 (E.D.N.Y. 2009) (same); *Kent v. Geren*, 2008 WL 150060, at *1 (D. Colo. Jan. 11, 2008) (same); *Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*, 2007 WL 2020161, at *2 (N.D. Fla. Jul. 9, 2007) (same); *Shah v. KIK Int'l LLC*, 2007 WL 1876449, at *1 (N.D. Ind. June 26, 2007) (same); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 638-39 (N.D. Iowa 2006) (same); *Bertaut v. Par. of Jefferson*, 2002 WL 31528468, at *1 (E.D. La. Nov. 8, 2002) (same); *Batdorf v. Trans Union*, 2000 WL 635455, at *5 (N.D. Cal. May 8, 2000) (same); *Finnegan v. Univ. of Rochester Med. Ctr.*, 180 F.R.D. 247, 249-50 (W.D.N.Y. 1998) (same); *Oil Express Nat'l, Inc. v. D'Alessandro*, 173 F.R.D. 219, 220-21 (N.D. Ill. 1997) (same); *Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485, 486-87 (E.D. Wis. 1991) (same); *Bus. Incentives Co. v. Sony Corp. of Am.*, 397 F. Supp. 63, 64-65 (S.D.N.Y. 1975) (same); *see also* 5B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1346 & n.18 (3d ed. 2020) (characterizing these cases as the "majority" and explaining their reasoning).

[71]   Lisenbee & Mobley, *supra* note 71, at 61-62; *see Fed. Contracting*, 128 Fed. Cl. at 788 (For this reason, and those others mentioned, "[n]o other court has adopted the [minority's] reasoning . . .; indeed, every court to consider [the minority view] on this point has disagreed with and declined to follow it." (internal quotation marks and citations omitted)).

[72]   *Gortat*, 257 F.R.D. at 366 (internal quotation marks omitted); *accord Compton v. City of Harrodsburg, Ky.*, 287 F.R.D. 401, 401-02 (E.D. Ky. 2012).

pleadings.[73] It could also muddle "the proper scope of discovery during the motion's pendency."[74] And entering a "default" on the unchallenged count would ignore the defendant's otherwise active appearance and undermine Delaware's strong preference for trials on the merits.[75] Here, imposing Unbound's posited move-and-also-answer rule likely would do all this.

But for the damages sought, Unbound's breach of contract claims are mirror images. Yet, the course Unbound suggests would command Invoy to deny Count I by answer—despite its properly-filed Rule 12(b)(6) pre-answer motion against it—or risk its default. Too, Unbound would extract an answer to Count II—discovery on which would then advance while Count I lags behind unresolved—or risk default.[76] The Civil Rules plainly were not intended to enclose litigants in such a

---

[73] *Gortat*, 257 F.R.D. at 366.; *see, e.g.*, *Ideal Instruments*, 434 F. Supp. 2d at 639.

[74] WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1346.

[75] *But see, e.g.*, Del. Super. Ct. Civ. R. 55(b)(2) (authorizing default judgment when a party "has failed to appear, plead or otherwise defend"); *In re Asbestos Litig.*, 228 A.3d 676, 685 (Del. 2020) ("A court . . . should be especially mindful of one overarching consideration—Delaware's strong judicial policy that courts should decide cases on their merits." (citations omitted)); *Beckett v. Beebe Med. Ctr., Inc.*, 897 A.2d 753, 757-58 (Del. 2006) ("In Delaware, public policy favors permitting a litigant a right to a day in court. Courts should apply [the Civil Rules] with a liberal construction because of the underlying policy that favors a trial on the merits, as distinguished from a judgment based on a default." (internal quotation marks and citations omitted)).

[76] And, Unbound says, because this is an action governed by § 3901, both answers *and* the dismissal motion would have to be by or accompanied by an affidavit meeting the specifics of § 3901(a)—or default is again risked. Or. Arg. Tr., Feb. 4, 2021, at 28-29 (D.I. 18).

maze.[77]  Accordingly, this Court adopts the majority view.  The answering period was tolled until now.  Invoy's choice not to answer any part of the complaint before moving against Count I constitutes neither an admission of its allegations' truth, nor a default, under § 3901 and Rule 12.

### b. Delaware Courts Retain Discretion to Require an Answer.

To be clear, the Court has determined only that our rules of procedure allow, as an initial matter, that a pre-answer motion for partial dismissal tolls the period for answering the whole complaint and that summary or default judgment is unwarranted where that motion's opponent premises its judgment request on the bare fact that the motion was filed before answering.  Simply put, a defendant will not risk default or concession when she does not simultaneously answer any allegations left unchallenged by her partial motion to dismiss.  That said, a court can—as a matter of its own discretion and for expediency's sake—order the filing of an answer to the complaint's unchallenged claims as that motion pends.  And, no doubt, there are instances (or even whole species of actions) where our courts as a matter of practice and sound case management do precisely that.  Where Unbound goes too far is in its attempt to elevate such discretion-based practice and process to a requirement under penalty of rule or statute.

---

[77]  *See* Del. Super. Ct. Civ. R. 1 (instructing this Court to construe the Rules in a manner that secures "just, speedy and inexpensive" results).

It is beyond debate that Delaware courts enjoy wide discretion to manage their affairs in a manner that "promote[s] economies of time and effort for the court, litigants, and counsel."[78] Indeed, "Delaware trial courts have inherent power to control their dockets"[79] and to "maintain orderly adjudication of claims."[80] As a result, Delaware courts have ordered some defendants to answer claims unchallenged by their instant motions.[81] In fact, the parties have represented to the Court that the "prevailing practice" in the Court of Chancery is to answer the allegations at which a partial dismissal motion is not aimed.[82] That practice—

---

[78] *Brenner v. Albrecht*, 2012 WL 252286, at *4 (Del. Ch. Jan. 27, 2012) (internal quotation marks omitted); *accord In re Montes-Galindez*, 2020 WL 2393357, at *1 (Del. May 11, 2020) ("In the absence of a clear showing of an arbitrary refusal or failure to act, this Court . . . will not . . . compel a trial court to perform a particular judicial function, to decide a matter in a particular way, or to dictate the control of its docket." (cleaned up)); *In re Bordley*, 545 A.2d 619, 620 (Del. 1988).

[79] *Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012).

[80] *Avve, Inc. v. Upstack Techs., Inc.*, 2019 WL 1643752, at *8 (Del. Super. Ct. Apr. 12, 2019) (citation omitted).

[81] *See, e.g.*, *Bayer-Highland*, 2018 WL 3129317, at *1-2. And even when a defendant has failed to timely answer, Delaware courts still may exercise their discretion not to enter a default judgment. *See, e.g.*, *Pinkett ex rel. Britt v. Nationwide Mut. Ins. Co.*, 832 A.2d 747, 750 (Del. Super. Ct. 2003).

[82] *See* Tr. Ruling at 11, 17-18, *Visionaid, Inc. v. Miller*, C.A. No. 7083-VCN (Del. Ch. May 22, 2012). The Court summons this bench ruling—the import of which the parties have vigorously briefed and argued—to substantiate the parties' representations of Chancery practice, not as influential precedent on interpretation of Chancery Rule 12. The Court of Chancery itself strongly cautions against such citation to and reliance on its own bench rulings. *See Focus Fin. Partners, LLC v. Holsopple*, 2020 WL 6390038, at *14 (Del. Ch. Nov. 2, 2020) ("[A] bench ruling typically reflects a case-specific determination that is intended for the parties, and by virtue of being spoken rather than written, its language and implications may be less clear. Compared to written decisions . . . the [bench] ruling starts at a disadvantage." (citations omitted)); *Day v. Diligence, Inc.*, 2020 WL 2214377, at *1 (Del. Ch. May 7, 2020) ("Transcript Rulings generally have *no* precedential value in this Court and they should ordinarily not be relied on as precedent. . . . Rulings from the

whether targeted or applied broadly—isn't wrong.[83]   And it certainly is not this Court's place to cast any doubt on it.  Neither § 3901 nor Rule 12 coerces courts to cede discretionary territory to a single course that may or may not be workable for every factual circumstance a litigant might allege.[84]

So, it is clear that moving for partial dismissal before answering is not a procedural error necessitating a default or analogous repercussions.  And, as critically, it is clear that this Court and its sisters are free under our rules to make case-specific judgments about the timing, nature and prudence of pleadings.

### B. COUNT I—WHICH SEEKS DAMAGES UNDER THE DOUBLE PRINCIPAL OPTION—SURVIVES DISMISSAL.

Having overcome procedural barriers, the Court now may reach the merits.  In moving to dismiss, Invoy argues that the Double Principal Option is an

---

bench . . . [do] not advance the common law." (emphasis in original) (citation omitted)); *High River Ltd. P'ship v. Occidental Petroleum Corp.*, 2019 WL 6040285, *7 n.77 (Del. Ch. Nov. 14, 2019) (same).  This Court takes the very same view of its own transcript or bench rulings—they are typically case-specific determinations intended for the parties and have little to no precedential value thereafter.

[83]   *But see* Invoy Reply Br. at 21-22 & n.10 (D.I. 11) (suggesting that a judicial officer errs by ordering an answer to unchallenged claims while a partial dismissal motions pends).  At oral argument, Invoy also contended that the Court of Chancery's prevailing practice on this point is just incorrect.  Or. Arg. Tr. at 8, 11.  It isn't.  Delaware courts have broad discretion to control their dockets, limited only by arbitrariness or abdication.  *In re Montes-Galindez*, 2020 WL 2393357, at *1.

[84]   *See* DEL. CODE ANN. tit. 10, § 3901(i) ("The Court, in its discretion, may extend time in which the defendant or defendants has to answer or *otherwise do anything* authorized by its Rules of Civil Procedure." (emphasis added)); Del. Super. Ct. Civ. R. 12(a) (authorizing the Court to select "a different time" than that provided in the Rule for answering a complaint and to generally dictate responsive pleadings).

unenforceable penalty because (1) damages for breach of the PNA were certain; and (2) the Option is not rationally related to Unbound's actual damages. The Court cannot agree given the very limited record before it. The complaint supports the reasonable inference that the Double Principal Option might well express an enforceable liquidated damages provision.

## 1. The Double Principal Option Implicates a Penalty Analysis.

Delaware enables sophisticated counterparties to contract as they wish and her courts are loath to disturb bilaterally-negotiated terms.[85] Pro-contractarian, "Delaware law in general recognizes that the value of contracts is maximized by enforcing them as written [and that] little value can come of a promise that can be avoided upon the remorse of the maker thereof."[86] Indeed, Delaware law promotes voluntary business arrangements "as a matter of fundamental public policy."[87]

---

[85] *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 761639, at *5 (Del. Super. Ct. Feb. 26, 2021) (quotation marks and citation omitted); *see Change Cap. Partners Fund I, LLC v. Volt Elec. Sys., LLC*, 2018 WL 1635006, at *4 (Del. Super. Ct. Apr. 3, 2018) ("Delaware 'courts will enforce the contractual scheme that the parties have arrived at through their own self-ordering, both in recognition of a right to self-order and to promote certainty of obligations.'" (quoting *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *4 (Del. Ch. Jan. 28, 2015))); *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009) ("Delaware law generally elevates contract law . . . to allow parties to order their affairs and bargain for specific results. . . ."); *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1059-61 (Del. Ch. 2006) (same).

[86] *Lyons Ins. Agency, Inc. v. Wark*, 2020 WL 429114, at *1 (Del. Ch. Jan. 28, 2020).

[87] *NACCO*, 997 A.2d at 35.

Still, Delaware's fundamental public policy of contractual enforcement is not absolute and will kneel to competing public policies of overriding concern.[88] When the fruits of a bargain are tainted by unsavory objectives, "our courts will decline to enforce [them], no matter how clear or sincerely intended when entered."[89] The inclusion of penalties disguised as liquidated damages provisions presents one such constraint on the freedom of contract.[90] This is so because "[c]ontract law allows parties to establish only a *good faith* estimation of actual damages sustained as a result of a contract's termination."[91] That the line separating good and bad faith recompense is often thin makes close scrutiny appropriate.[92] After all, "[t]he distinction between a penalty and liquidated damages clause is significant—if a provision is . . . a penalty, it is void as against public policy . . .; if the provision is a true liquidated damages provision, it will be enforced according to its own terms."[93]

---

[88]  *See Sycamore*, 2021 WL 761639, at *9-10 (collecting and analyzing authority in which Delaware's pro-contractarianism was supplanted by even more fundamental values).

[89]  *Wark*, 2020 WL 429114, at *1.

[90]  *Id.* at *4.

[91]  *Del. Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 650 (Del. 2006) (emphasis added); *see* DEL. CODE ANN., tit. 6, § 2-718(1) (2020) ("Damages for breach by either party may be liquidated . . . but only at an amount which is reasonable[.]").

[92]  *See Wark*, 2020 WL 429114, at *4 ("Delaware imposes limits on liquidated damages clauses . . . and will not enforce them if they function as coercive penalties." (citing *Swier*, 900 A.2d at 650)).

[93]  *Swier*, 900 A.2d at 650 (internal quotation marks omitted).

Liquidated damages provisions embody "the parties' best guess of the amount of injury that would be sustained in a contractual breach" and serve to make "certain and definite damages which would otherwise be uncertain and not susceptible of proof."[94] In contrast, a penalty is a "punishment for default, rather than a measure of compensation for . . . breach," which inserts with blunt instruments "a stipulated sum . . . irrespective of the damage sustained."[95] To ascertain the difference, the Court conducts a two-prong analysis that probes the "intent of the parties"—"a mixed question of law and fact."[96] First, the Court must determine whether damages were certain, *i.e.*, capable of "accurate calculation," at the time of contracting.[97] If damages were calculable with a fair amount of precision, then a clause that concocts an aggravated total is a penalty. And second, if damages were uncertain or at least could not be forecasted reliably, then the Court must determine whether the amount selected is reasonable.[98] At this step, the Court will not strike that number merely

---

[94] *Id.* (internal quotation marks omitted).

[95] *Id.*

[96] *Id.*

[97] *Id.* at 651 (citing *Lee Builders v. Wells*, 103 A.2d 918, 919 (Del. Ch. 1954)) (internal quotation marks omitted); *Brazen v. Bell Atl. Corp.*, 695 A.2d 43, 48 (Del. 1997); *cf. Kold, LLC v. Croman*, 2014 WL 7008431, at *4 (Del. Super. Ct. Nov. 25, 2014) (The Court "will not construe a liquidated damages provision to be a penalty if . . . at the time of contracting, the damages the parties might reasonably anticipate were difficult or impossible to ascertain[.]" (citation omitted)).

[98] *Swier*, 900 A.2d at 651 (internal quotation marks and citations omitted); *cf. Kold*, 2014 WL 7008431, at *4 (A liquidated damages provision is not a penalty if "the stipulated amount

-26-

because the cost "has become financially inconvenient for [a counterparty] to honor[.]"[99] Instead, to be unreasonable, "the amount at issue must be *unconscionable or not rationally related* to any measure of damages a party might conceivably sustain."[100]

Despite all this, Unbound contends that a penalty analysis is unnecessary because the Double Principal Option "is not a liquidated damages provision[;] [it] is a valid and enforceable agreed-upon amount that is triggered when Invoy defaults."[101] In other words, Unbound tries here to split two hairs: that a default is somehow distinguishable from a breach, and a provision that governs only one of two party's dereliction cannot be a liquidated damages clause. Not so. A liquidated damages provision may be best described as any "contract provision that requires payment in the event of a termination."[102] Here, the Double Principal Option cannot

---

reasonably estimates the damages that would likely be caused by a breach, or is reasonably proportionate to the damages [that] have actually been caused by the breach." (citation omitted)).

[99] *Change Cap.*, 2018 WL 1635006, at *9 (internal quotation marks omitted).

[100] *Swier*, 900 A.2d at 651 (emphasis in original) (internal quotation marks and citations omitted).

[101] Unbound Op. Br. at 13.

[102] *Swier*, 900 A.2d at 651; *Alltrista Plastics, LLC v. Rockline Indus., Inc.*, 2017 WL 237625, at *2 (Del. Super. Ct. Jan. 18, 2017) ("[T]he Supreme Court [has] affirmed that liquidated damages, by definition, are damages paid in the event of a breach of contract." (citing RESTATEMENT (SECOND) OF CONTRACTS § 356 (1981)) (internal quotation marks omitted)).

be exercised unless there is an Event of Default.[103]  That might be enough to reveal its role as a liquidated damages provision.

Unbound's hair-splitting also would rend the PNA's plain language. The Double Principal Option too remedies "defaults" unrelated to timely repayment. Indeed, Unbound may collect Principal twice its size if Invoy or one of its subsidiaries (1) experiences a change in corporate control; (2) cross-defaults by incurring inordinate indebtedness to someone else; (3) securitizes any of its assets; (4) declares bankruptcy; or (5) reneges on a warranty.[104]  The parties understood that any of these Events could terminate the PNA.  And so, even if there were a difference of commercial magnitude between a payment default on a note and a generic contractual breach,[105] the parties unambiguously agreed that it would not matter.[106]

In a last gasp, Unbound says that the Double Principal Option is not a liquidated damages provision because it really is just a charge of additional

---

[103]  PNA §§ 3, 4(a).

[104]  *Id*. at §§ 3(b)-(f).

[105] *But see Default*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The omission or failure to perform a legal or *contractual* duty[.]" (emphasis added)); *id. Breach* ("A violation or infraction of a law, obligation or *agreement*[.]" (emphasis added)).

[106] *See Surf's Up*, 2021 WL 117036, at *10 ("When the contract is clear and unambiguous, the Court gives full effect to the plain-meaning of the contract's provisions." (cleaned up)); *see also* Unbound Reply Br. at 4 ("Neither party argues that the contract language is ambiguous and it is not.").

Interest.[107]  Unbound's reasoning here devolves a discussion of usury in which Unbound insists Invoy cannot bemoan a high interest rate in a state that does not cap it.[108]  True, but inapt.  The Double Principal Option itself can be read to remove Interest from the equation.[109]  Given the reticulated terms the parties devised for tabulating Interest, it appears that the Option was meant to disregard the normal rates in favor of something else.[110]  Accordingly, at this point, the Court must say that the Double Principal Option implicates a penalty analysis.

### 2. Count I's Damages are Reasonably Conceivable.

For Count I to withstand dismissal, Unbound must have pled specific allegations supporting its actual damages—an element of a breach of contract claim.[111]  Where, as here, liquidated damages are resisted as penal, the burden is on the party seeking elimination of the purported penalty to establish both penalty-analysis prongs.[112]  So, on its dismissal motion, Invoy must show it is not reasonably

---

[107] Unbound Op. Br. at 13-15.

[108] *See* DEL. CODE ANN. tit. 6, §§ 2301(c), 2304(a), 2306.

[109] PNA § 4(a)(i).

[110] *Compare id.* § 1(b) (expressly defining Interest and providing calculation methodology) *with id.* § 4(a)(i) (requiring payment "in lieu of accrued Interest").

[111] *See Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *3 (Del. Super. Ct. Feb. 22, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).

[112] *See CRS Proppants LLC v. Preferred Resin Holding Co., LLC*, 2016 WL 6094167, at *3 (Del. Super. Ct. Sept. 27, 2016) (citing *S.H. Deliveries, Inc. v. TriState Courier & Carriage, Inc.*, 1997 WL 817883, at *2 (Del. Super. Ct. May 21, 1997)).

conceivable that Count I's damages derive from any other source but a penalty.[113]

The Court, though, will presume a liquidated damages provision is valid.[114] And the

Court will not dismiss Count I unless Invoy's interpretation of the Double Principal

Option's purpose at the time of contracting is the only reasonable one.[115] This, the

Court cannot say.

### a. Damages May Have Been Uncertain.

Invoy contends that damages were capable of accurate calculation because the

parties agreed to a specific Principal-Interest scheme. But, at this stage, the Court

can't say why the parties opted to fix Interest at 10% per year or $300,000 at the

time of contracting.[116] Why not 20%? Why not $500,000? Why not a floating rate?

Why not attach a security interest? Those queries are why Delaware law is reluctant

to find damages certain on a barebones record; a counterparty would be deprived of

---

[113] *See inVentiv*, 2021 WL 252823, at *4 (Court cannot dismiss if "any reasonable conception [of an element] can be formulated to allow . . . recovery." (internal quotation marks and citations omitted)).

[114] *Kold*, 2014 WL 7008431, at *4 ("In Delaware, liquidated damages [provisions] are presumptively valid and enforceable[.]" (citation omitted)).

[115] *See Vinton v. Grayson*, 189 A.3d 695, 699-700 (Del. Super. Ct. 2018) ("In Delaware, the interpretation of a contract is a question of law suitable for determination on a motion to dismiss. But, on a motion to dismiss, dismissal is proper only if the defendants' interpretation is the only reasonable construction as a matter of law." (cleaned up)).

[116] *See Swier*, 900 A.2d at 650-51; *S.H. Deliveries*, 1997 WL 817883, at *2.

a meaningful opportunity to litigate mutual intent.[117]  Indeed, in the absence of a

fortuitous (but unusual) term admitting that damages are uncertain,[118] courts

interpreting such provisions need considerable information surrounding the

circumstances under which the parties chose the disputed amount.[119]  But here, "[a]t

the moment, the Court has nothing more than the arguments of [Invoy's] counsel to

support a finding" that the PNA conclusively settled with certainty and precision

amounts due on the note.[120]  That, though, is not enough to negate the reasonable

inference that the parties picked these numbers because they were unsure about what

damages otherwise might be owing and appropriate.[121]  Accordingly, because

---

[117] *See Olsen v. T.A. Tyre Gen. Contractor, Inc.*, 2006 WL 2661140, at *2 (Del. Aug. 24, 2006) (summarily reversing grant of dismissal motion on liquidated damages because "the validity of the liquidated damages clause was never fully litigated").

[118] *See Piccotti's Rest. v. Gracie's, Inc.*, 1988 WL 15338, at *1 (Del. Super. Ct. Feb. 23, 1988) (analyzing liquidated damages provision that stated "Sellers and Buyers agree . . . it is exceptionally difficult to assess damages in the event that the Buyers violate all or part of this agreement").

[119] *See, e.g.*, *CRS Proppants*, 2016 WL 6094167, at *3-4 (analyzing a liquidated damages provision on a full summary judgment record and concluding market conditions at the time of contracting made damages uncertain); *Swier*, 900 A.2d at 651 (reviewing a liquidated damages provision on a full trial record and affirming damages as uncertain).

[120] *DecisivEdge, LLC v. VNU Grp., LLC*, 2018 WL 1448755, at *7 (Del. Super. Ct. Mar. 19, 2018); *see id.* (denying motion to dismiss in liquidated damages case to allow for "additional discovery").

[121] *See Swier*, 900 A.2d at 650 (characterizing issue of liquidated damages provision *vel non* as a "mixed question of law and fact"); *Cent. Mortg.*, 27 A.3d at 536-37 (discussing conceivability standard).

liquidated damages must be "incapable of accurate estimation to be valid,"[122] and

Invoy has not carried its burden on this question,[123] the Court cannot conclude that

Unbound's recovery under Count I isn't reasonably conceivable.[124]

### b. The Double Principal Option May Have a Rational Basis.

Assuming damages were certain, the Court still must reject Invoy's attack on

the Double Principal Option's rationality.[125]   That is because Invoy's Principal-

Interest arguments, repeated here, suffer from the same factual defects as before.

Delaware courts are inclined to find no rational basis where the recourse

chosen is totally outside the breach's natural dimensions, is inconsistent with the

parties' relationship, or grants a secured lender the power to break the law.[126]   But

---

[122] *Wark*, 2020 WL 429114, at *7 (citing *Faw, Casson & Co., L.L.P. v. Halpen*, 2001 WL 985104, at *2 n.1 (Del. Super. Ct. Aug. 7, 2001)).

[123] *See CRS Proppants*, 2016 WL 6094167, at *3 (observing that burden is on party claiming penalty to demonstrate both penalty-analysis prongs)

[124] *Cent. Mortg.*, 27 A.3d at 535; *Vinton*, 189 A.3d at 700.

[125] *Swier*, 900 A.2d at 651.

[126] *Wark*, 2020 WL 429114, at *7-8 (finding a penalty where the provision was "unreasonable to the extent it purport[ed] to impose fixed damages untethered from any act or behavior . . . beyond that of choosing to work for a competitor"); *Halpen*, 2001 WL 985104, at *3 n.7 (finding a penalty where the provision failed to "connect[] defendant's conduct in some fashion with a resulting business loss"); *Tropical Nursing, Inc. v. Arbors at New Castle Subacute & Rehab. Ctr.*, 2005 WL 8135148, at *6 (Del. Super. Ct. Apr. 4, 2005) (finding a penalty where the provision sought to disincentivize the defendant from "hiring away" an employee from plaintiff where there was no evidence "hiring away" had any bearing on the parties' business relationship); *Am. Energy Sys. of Wash., Inc. v. Galeano, Inc.*, 1991 WL 166117, at *3 (Del. Super. Ct. July 19, 1991) (finding a penalty where the provision granted a lessor the right both to repossess the collateral and seek full payment of its value from the lessee in violation of positive commercial law).

here, the complaint supports the reasonable inference that Unbound was relatively overexposed in extending a volatile, short-term and uncollateralized credit line to a startup that was unable to fundraise during a pivotal equity financing period. It is therefore reasonably conceivable that doubling Principal in lieu of Interest was rationally related to protecting Unbound from the possibility that it never would recoup Interest from a firm that had been struggling to attract capital in the first place. As a result, Invoy can't rest on the fact that Unbound's "liquidated damages are substantially larger than its actual damages" because it is reasonably conceivable that the Double Principal Option was a "reasonable estimate of the damages which could be caused."[127] Discovery—given this exceedingly thin record—would be helpful in fleshing this out.[128]

Finally, Invoy objects to the suggestion that, because it is a sophisticated entity and was represented by counsel, a penalty cannot lie. It is true that Delaware courts have not grafted a superior-bargaining-position element onto the penalty analysis. And, to be sure, there is no corporate exemption from the penalty analysis that frees firms to draft agreements forbidden to individuals. But—though not dispositive— degree of sophistication, arsenal of resources, and presence of counsel at the

---

[127] *DecisivEdge*, 2018 WL 1448755, at *6 (internal quotation marks omitted); *S.H. Deliveries*, 1997 WL 817883, at *2 (same); *see Cent. Mortg.*, 27 A.3d at 535 (requiring courts to draw inferences in favor of the non-movant).

[128] *See DecisivEdge*, 2018 WL 1448755, at *7.

negotiation table, may be relevant factors when assessing whether a provision is unconscionable or actually had a rational basis at the time of contracting.[129] That the PNA was executed by entities with attorneys[130] may not carry the day for Unbound. At this point, however, the PNA's formation does further support the reasonable inference that an investment fund and its portfolio company knew the stakes when contemplating loss on an expensive instrument. Accordingly, the Court is not prepared to hold—on a motion to dismiss—that any bridge loan containing a term enlarging a matured or liquidated debt twofold is commercially unreasonable, and thus, unenforceable at law.[131]

Count I's damages are reasonably conceivable. It survives dismissal.

## C. SUMMARY JUDGMENT AND RELATED RELIEF ARE UNWARRANTED.

The Court returns, briefly, to Unbound's motion. As explained, Invoy's motion is procedurally proper. Accordingly, a default judgment cannot be entered. With its procedural weapons disarmed, Unbound is left to argue that Invoy's

---

[129] *See, e.g.*, *Swier*, 900 A.2d at 653 (observing that "both parties were sophisticated and represented by counsel" "[a]t the time of the contract" in concluding the liquidated damages provision was not a penalty); *CRS Proppants*, 2016 WL 6094167, at *2 (observing that the subject agreement was "heavily negotiated by sophisticated parties" at the outset of the penalty analysis and concluding the provision was not a penalty).

[130] *See* PNA § 12 ("The Parties, each of which has been represented by counsel in connection herewith, have had ample opportunity to review this Agreement.").

[131] *See DecisivEdge*, 2018 WL 1448755, at *7 (denying motion to dismiss even though the disputed provision was "suspect" and gave the court the "impression" that it was a penalty because the record was too underdeveloped on the parties' mutual intent).

unabashed and unjustified breach entitles it to summary judgment. Just as with Invoy's motion, though, the record simply is too undeveloped to accord Unbound that relief or to jump to those conclusions.[132] Its answering duties now triggered, Invoy may register legitimate denials or defenses that might undercut or excuse Unbound's allegations. We'll see. But a more thorough inquiry is the prudent course.[133] Summary judgment for Unbound now is premature—and denied.

## IV. CONCLUSION

For the reasons explained above, Unbound's motion for default and/or summary judgment is **DENIED**; there has been no cognizable default under Delaware's note action statute and it is simply too early to find the facts so clear as to warrant judgment due as a matter of law. Invoy's motion for partial dismissal, too, is **DENIED**; it would be equally premature to find the PNA's Double Principal Option an illegal penalty as a matter of law.

**IT IS SO ORDERED.**

_____

**Paul R. Wallace, Judge**

---

[132] *See Rutledge*, 750 A.2d at 1227-28 (observing that courts have discretion to deny summary judgment where factual clarity is warranted); *Moore*, 405 A.2d at 680 (placing burden on the movant to demonstrate its claim is supported by undisputed facts); *Williams Cos.*, 2020 WL 3581095, at *2 (observing that a court should deny summary judgment where a record is necessary for equitable purposes); *Judah*, 378 A.2d at 632 (instructing courts to view the facts in the light most favorable to the non-movant).

[133] *See Ebersole*, 180 A.2d at 468-69.